Argued and submitted March 11, affirmed on appeal and cross-appeal July 2, 2003

Nathan L. JONES
and Gail Jones,
*Appellants - Cross-Respondents,*

*v.*

EMERALD PACIFIC HOMES, INC.,
*Respondent - Cross-Appellant,*

*and*

Jeffery L. BUTTS
and Kimberly Butts,
*Respondents,*

*and*

Michael BUTTS
and Gary Donovan,
*Defendants.*

CCV 9809193; A108879

71 P3d 574

Gary G. Linkous argued the cause for appellants - cross-respondents. With him on the briefs was John R. MacMillan.

Lisa E. Lear argued the cause and filed the briefs for respondent - cross-appellant Emerald Pacific Homes, Inc., and respondents Jeffery and Kimberly Butts.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Emerald Pacific Homes, Inc. (Emerald) contracted to build plaintiffs a custom home. Satisfied with neither the quality nor the speed of construction, plaintiffs brought this action against Emerald and its owners (collectively, defendants) for negligence and breach of contract. At the conclusion of plaintiffs' case-in-chief, the trial court granted defendants' "motion for partial directed verdict"[1] on the negligence claim, ruling that the only duties that defendants allegedly breached derived from the contract and not from some independent source of law. The contract claim proceeded; plaintiffs obtained a jury verdict and an enhanced prevailing party fee of $5,000. Plaintiffs appeal from the dismissal of their negligence claim. Emerald (but not the other defendants) cross-appeals from the award of the enhanced prevailing party fee. We affirm on the appeal and on the cross-appeal.

## I. PLAINTIFFS' APPEAL

The following facts are not in dispute. Emerald agreed to build a home for plaintiffs according to the terms of a one-page form captioned "Custom Home Contract," which provided, in part:

"We AGREE, hereby to furnish material and labor to complete a single family home in accordance with the Architectural and/or Engineering plans as well as the signed specification form, and cost break down sheet, for the sum of: four hundred eleven thousand[ ] two hundred eighteen dollars ($411,218)[.]

"* * * * *

"All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices."

Plaintiffs became dissatisfied with Emerald's alleged failure to meet its schedule and with the allegedly poor workmanship for which it was responsible, in particular with a leaky roof that caused damage to the interior finish. When Emerald

---

[1] The proper term for such a motion is a motion to withdraw an issue from the jury by way of a peremptory instruction. *See Erickson Air-Crane Co. v. United Tech. Corp.*, 87 Or App 577, 579, 743 P2d 747, *rev den*, 304 Or 680 (1987).

did not respond to plaintiffs' request for repairs, plaintiffs hired a substitute contractor, who subsequently discovered other construction defects.

Plaintiffs sued defendants and two other individuals who were voluntarily dismissed before trial. Against Emerald, plaintiffs alleged negligence and breach of contract; against defendants Jeffery and Kimberly Butts, they sought to "pierce the corporate veil" by alleging undercapitalization and failure to maintain corporate formalities. As noted above, the trial court dismissed the negligence claim. The jury found against plaintiffs on the "piercing" claim but in their favor on the breach of contract claim. Plaintiffs received damages of $86,652 plus a $5,000 enhanced prevailing party fee based on Emerald's conduct during the litigation.

Those outcomes were incorporated in a judgment entered on December 6, 1999. Plaintiffs filed a notice of appeal relative to their dismissed negligence claim on January 4, 2000, and Emerald filed a notice of cross-appeal on the prevailing party fees 10 days later. This court, however, discovered that the judgment did not resolve the claims against one of the parties that plaintiffs had voluntarily dismissed prior to trial. Because the judgment did not meet the requirements of ORCP 67 B, it was not an appealable judgment. ORCP 67 A, B; ORS 19.205(2)(e). We granted plaintiffs' motion for leave to allow the trial court to enter a final judgment and agreed to hold the appeal in abeyance as authorized by ORS 19.270(4). Our order gave plaintiffs 30 days after the entry of a final judgment to file an amended notice of appeal. On May 16, the trial court entered a stipulated judgment of dismissal dismissing the unresolved claim. Although that judgment, combined with the earlier one, created an appealable judgment, *State ex rel Orbanco Real Estate Serv. v. Allen*, 301 Or 104, 116, 720 P2d 365 (1986), plaintiffs nonetheless submitted a proposed amended judgment wrapping the two partial judgments into a single "super judgment." The trial court entered that judgment on June 23, 2000. Plaintiff filed another notice of appeal on July 6, 2000— within 30 days of entry of the "super judgment" but more than 30 days after entry of the stipulated judgment. Emerald filed a notice of cross-appeal on July 10.

■ The substantive issue on appeal is whether plaintiffs can state a claim for negligence arising out of Emerald's alleged breach of the duties specified in their contract. However, based on the sequence of events after the first, incomplete, judgment was filed, Emerald raises a threshold challenge to our jurisdiction.[2] Emerald contends that, because this case became appealable when the stipulated judgment disposing of the outstanding claim was entered on May 16, 2000, that event started the time period for plaintiffs to file their notice of appeal. That period, as noted above, expired on June 15. Plaintiffs' amended notice of appeal, however, was not filed until July 6. According to Emerald, when plaintiffs failed to meet the June 15 deadline, this court lost jurisdiction, regardless of the fact that plaintiffs filed within 30 days of the later "super judgment." Further, according to Emerald, plaintiffs appealed from the wrong judgment: they appealed from the "super judgment" instead of the stipulated judgment, and we should dismiss the appeal on that ground as well.

■ Emerald's first argument is based on the assumption that, when we granted plaintiffs leave to seek a final judgment, we transferred jurisdiction to the trial court and that, once plaintiffs did not file a notice of appeal within 30 days of entry of the final judgment, ORS 19.255, we could not reassume jurisdiction. However, in *Baugh v. Bryant Limited Partnerships*, 312 Or 635, 644, 825 P2d 1383 (1992), the Supreme Court held that this court does not lose jurisdiction when, after a party attempts to appeal from a nonfinal judgment, the court grants that party leave to seek an appealable judgment under ORS 19.270.[3] For that reason, "the law does not require that a new or amended notice of appeal be filed within a particular number of days after entry of an appealable judgment in order for the Court of Appeals to have jurisdiction." *Baugh*, 312 Or at 644. Although this court "may" dismiss an appeal if the amended notice of appeal is not filed within a specified time, we are not obligated to do so. *Id.*; *see*

---

[2] Defendants first raised this issue by way of a motion to dismiss the appeal, which we denied. ORAP 7.15(3) allows them to resubmit the motion challenging our jurisdiction.

[3] *Baugh* dealt with ORS 19.033(4), the direct predecessor of ORS 19.270.

*also S.W. v. Schellenberg*, 152 Or App 33, 36, 952 P2d 567 (1998).

Further, because plaintiffs' amended notice of appeal specified that it "relates to the court's decision to dismiss plaintiffs' negligence claim against defendants," we conclude that, even though the notice of appeal referred to the "super judgment" and not to the stipulated judgment, it did not mislead the court or any party. *See Ensley v. Fitzwater*, 293 Or 158, 645 P2d 1062 (1982) (reinstating appeal where notice of appeal specified wrong judgment but correct judgment was apparent). We therefore decline to exercise our discretion to dismiss this appeal, and we proceed to the merits.

Oregon courts have long recognized that, in some circumstances, a breach of contract can give rise to tort liability. In the older cases, the Supreme Court explained that, under common law pleading rules, a plaintiff could allege the existence of a contract with the defendant as part of the "inducement," *Currey v. Butcher*, 37 Or 380, 385, 61 P 631 (1900), thereby establishing the necessary predicate to a claim for negligence based on an allegation that the defendant "assumed a position, relationship or status upon which the general law predicates a duty independent of the terms of the contract * * *." *Harper v. Interstate Brewery Co.*, 168 Or 26, 37, 120 P2d 757 (1942). The modern cases carry forward and refine the basic idea that a tort action between parties to a contract can arise when the plaintiff's damages result from breach of an obligation that is independent of the terms of the contract, that is, an obligation that the law imposes on the defendant because of his or her relationship to the plaintiff, regardless of the terms of the contract between them. *E.g., Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996); *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992); *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 259, 611 P2d 1158 (1980); *Kisle v. St. Paul Fire & Marine Ins.*, 262 Or 1, 6-7, 495 P2d 1198 (1972). The plaintiff's tort claim may exist even if it is based on an obligation that the defendant assumes as an express or implied term of the contract, so long as the obligation would exist even if it were not in the contract. *Georgetown Realty*, 313 Or at 106.

■ ■ Numerous cases define the kinds of relationships between contracting parties that can impose extra-contractual obligations. Generally, such relationships must impose obligations "beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992). More specifically, the Supreme Court has described the relationships as falling into several categories: those between "professionals" such as lawyers, physicians, architects and engineers and their clients; those between principals such as brokers and their agents; those between trustees and beneficiaries; and, in some instances, those between insurers and their insureds. *Conway*, 324 Or at 239-40. More helpful than the list of categories is the court's explanation of the principles underlying them:

> "In *Onita*, this court described the relationships summarized above as those in which the party who owes a duty of care is acting, 'at least in part, * * * to further the economic interests of the "client," the person owed the duty of care.' Another way to characterize the types of relationships in which a heightened duty of care exists is that * * * the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.

> "This special responsibility exists in situations in which one party has hired the other in a professional capacity, as well as in principal-agent and other similar relationships. It also exists in the type of situation described in *Georgetown Realty*, in which one party has relinquished control over the subject matter of the relationship to the other party and has placed its potential monetary liability in the other's hands. In all those relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party. That special responsibility carries with it a

duty to exercise reasonable care to avoid making negligent misrepresentations."

*Conway*, 324 Or at 240-41 (citation omitted). To summarize, parties to a contract are in a "special relationship" imposing a heightened duty of care and thereby creating potential tort liability when one party delegates to the other the authority to make important decisions with the understanding that the authority is to be exercised on behalf of and for the benefit of the authorizer.

 Further, the inquiry whether such a relationship exists is functional, not formal. "[T]he crucial aspect of the relationship is not its name, but the roles that the parties assume in the particular interaction where the alleged tort and breach of contract occur." *Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 334, 39 P3d 903, *rev den*, 334 Or 190 (2002). A contractual relationship between a product manufacturer and dealer, or between an insurer and an insured, may or may not give rise to tort liability, depending on the nature of the parties' contracts and their dealings with each other. *Id.* (citing cases). Thus, the fact that a relationship bears the label "professional" does not, by itself, mean that the relationship creates a heightened duty of care. In every case, the inquiry is fact-specific. *Lewis-Williamson v. Grange Mutual Ins. Co.*, 179 Or App 491, 495, 39 P3d 947 (2002).

 For this reason, we conclude that the trial court did not err in granting defendants' motion for a partial directed verdict. We review such a grant to determine if the facts in evidence, interpreted in favor of the nonmoving party, and every beneficial inference that can be drawn from those facts entitle the moving party to a favorable decision as a matter of law. *Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 695, 874 P2d 82 (1994). Although it is conceivable that the facts in some situations might demonstrate that a building contractor and its client are in a contractual relationship from which tort liability might arise, *e.g., Bales for Food v. Poole*, 246 Or 253, 255-56, 424 P2d 892 (1967), in the present case plaintiffs rely on the contract itself and no other evidence. In their briefs and at oral argument, they insist that the contract itself creates tort liability as a matter of law; they did not designate as part of the record on appeal the

transcription of any testimony by witnesses or any exhibits relevant to the nature of their relationship with defendants. As noted above, however, the only relevant provision in the contract states, "All work to be completed in a workmanlike manner according to standard practices." That statement does not by itself distinguish this contract or the relationship it creates from any other arm's-length contractual relationship. Based on that evidence alone, the parties were not in the kind of relationship that gives rise to tort liability as a matter of law.

Plaintiffs also argue that, because defendants described their motion for a partial directed verdict as a "renewal" of their pretrial motion for judgment on the pleadings, and because the parties and the court treated the motion as involving only legal issues, we should treat the motion as though it *were* for a judgment on the pleadings and review it based on the facts alleged in the complaint and inferences drawn from them viewed in the light most favorable to plaintiffs. *Thompson v. Estate of Adrian L. Pannell*, 176 Or App 90, 95, 29 P3d 1184 (2001), *rev den*, 333 Or 655 (2002). Under that standard, according to plaintiffs, we would have to reverse because, on the facts as pleaded, tort liability could arise, depending on the evidence subsequently introduced.

We are not persuaded. Defendants did, in fact, move for a judgment on the pleadings before trial. And in denying the motion, the trial court did announce: "I am going to deny the motion at this time. I think it's a motion that we'll have to revisit at the conclusion of the plaintiffs' case." Further, after plaintiffs' case, defendants' attorney said, "Your Honor, I have a motion for partial directed verdict against the * * * negligence claim. Essentially this is a renewal of the motion I made earlier for judgment on the pleadings, which you ruled was premature at that time." Thus, plaintiffs' argument has some surface appeal. Closer examination, however, convinces us that it is not well taken. Although defendants' counsel stated the motion was "essentially" a renewal of the earlier motion, he called it a motion for partial directed verdict, as did the court it in its oral ruling: "[T]he motion for summary—or for directed verdict as to the first claim for relief as to negligence is allowed." Further, in discussing the motion,

counsel and the court referred to the contract at issue in this case, which was not incorporated into the pleadings. In fact, the court based its ruling on a comparison of the duty alleged in plaintiffs' complaint with the duty spelled out in the contract: "I do not see anything alleged here in an attempt to create a separate independent duty on behalf—on the part of the defendant outside the scope of the contract." A ruling based on evidence *outside of* the pleadings cannot properly be a ruling on a motion for judgment *on* the pleadings. *Thompson v. Telephone & Data Systems, Inc.*, 132 Or App 103, 105, 888 P2d 16 (1994). We therefore conclude that the trial court treated the motion as one for a partial directed verdict, based its ruling on the evidence, and, on the record before us, ruled correctly.

## II. EMERALD'S CROSS-APPEAL

Pursuant to ORS 20.190(3),[4] the trial court awarded plaintiffs $5,000 as an enhanced prevailing party fee. The court based the award on the following findings:

---

[4] ORS 20.190(3) provides:

"In addition to the amounts provided for in subsection (2) of this section, in any civil action or proceeding in a circuit court in which recovery of money or damages is sought, the court may award to the prevailing party up to an additional $5,000 as a prevailing party fee. The court shall consider the following factors in making an award under the provisions of this subsection:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of a larger prevailing party fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of a larger prevailing party fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g) Any award of attorney fees made to the prevailing party as part of the judgment.

"(h) Such other factors as the court may consider appropriate under the circumstances of the case."

"a. Defendants failed to make a timely or reasonable settlement offer during the two scheduled pretrial settlement conferences and failed to meaningfully participate in those proceedings[.]

"b. In connection with defendants' failure to meaningfully participate in those proceedings, defendants failed to send to the settlement conference a representative with authority to settle the case.

"c. Defendants failed to produce discovery in a timely fashion, causing plaintiff to incur additional attorneys fees, preparation time and increase the length of trial. Recesses were necessary during the trial for the Court to address discovery violations out of the presence of the jury.

"d. The Court also notes the defendant, Jeffery Butts, failed to attend two days of the proceedings, indicating a lack of good faith or appreciation of the seriousness of the proceedings."

Emerald contests the accuracy of the findings and, to the extent they are accurate, their sufficiency as a basis for an enhanced prevailing party fee. We will not reject a trial court's finding if any evidence in the record supports it. ORCP 62 F (finding of fact by the court has same conclusive effect as one found by jury); Or Const, Art VII (Amended), § 3 (fact found by a jury cannot be rejected on appeal unless there is no evidence to support it). We review the trial court's conclusion that the findings justify an enhanced prevailing party fee for abuse of discretion. *Wright v. Jones*, 155 Or App 249, 251, 964 P2d 1048 (1998).

On reviewing the record, we find evidence supporting all of the trial court's findings. Emerald, acting through its president Jeffery Butts, made a maximum offer of $10,000 during the settlement conferences.[5] In light of the jury verdict against it for over $80,000, the trial court could find that the offer was not reasonable.

Regarding Emerald's failure to send a representative with settlement authority to the settlement conference, plaintiffs assert that no such representative attended, and Emerald asserts that one did. The trial court resolved the

---

[5] After the conference was over, defendants did increase their offer.

conflicting factual assertions in favor of plaintiffs, and evidence in the record supports that decision.

Emerald's failure meaningfully to participate in settlement proceedings is easily inferrable from the following sequence of events related by plaintiffs' counsel: The parties' counsel agreed to postpone the first settlement conference. Jeffery Butts did not attend the second conference, and when Kimberly Butts was asked to propose a settlement amount she replied (in her capacity as Emerald's representative, as Emerald concedes) that she could not do so in Jeffery Butts's absence. At that point, the settlement judge declared that the conference was a waste of time, and she adjourned it.

Further, evidence supports the findings that Emerald failed to produce some discovery in a timely fashion and that that failure caused some additional expenditures of time and money by plaintiffs' counsel and the court, including at least one recess for the court to address discovery violations.[6]

Finally, Emerald admits that Jeffery Butts failed to attend two days of the proceedings but contends that he did so because he had to be on a construction site in Seattle. The trial court, aware of that argument, apparently concluded that the choice to miss the trial instead of finding a surrogate to be in Seattle indicated "a lack of good faith or appreciation of the seriousness of the proceedings." The court drew that inference from undisputed facts, and we find no reason to reject it.

We therefore conclude that we cannot reject any of the trial court's findings. We turn, then, to the question whether the court abused its discretion in awarding an enhanced prevailing party fee based on those findings. We conclude that it did not.

---

[6] We do note that one discovery violation—Jeffery Butts's failure timely to produce Emerald's 1998 income tax return—was not as egregious as plaintiffs alleged. According to plaintiffs, Jeffery Butts should have produced the return before he was deposed. At his deposition, he testified that the corporation had only negligible assets; the tax return showed significantly more. Plaintiffs maintain that had the return been in their possession at the deposition, they would not have had any reason to attempt to pierce the corporate veil. However, uncontradicted testimony indicates that the tax return was not prepared until two weeks after the deposition.

■ The purpose underlying the enhanced prevailing party fee statute is to "penalize parties who file frivolous claims [or defenses], act in bad faith, or are otherwise unreasonable during litigation." *Gough v. Vaughn*, 151 Or App 536, 539, 950 P2d 935 (1997). Emerald filed no frivolous defenses. Regarding its bad faith and unreasonableness, qualities that have no fixed contours and which frequently disclose themselves more through nuances of bearing and tones of voice than through concrete actions and written words, we regard as significant the following comment by the trial judge, who was, we reemphasize, much closer to the events than we are: "I think the Butts' conduct here on behalf of the corporation * * * kind of makes Mr. Butts a poster child for award of enhanced attorney's fees." On the record before us, we cannot say that the trial court abused its discretion in concluding that defendants' conduct on behalf of Emerald was sufficiently unreasonable to justify the enhanced prevailing party fee.

Affirmed on appeal and cross-appeal.