Argued and submitted March 11, reversed and remanded September 2, 2009

Richard ABRAHAM
and Janice Abraham,
husband and wife,
as trustees for the
Richard D. Abraham and Janice M. Abraham Trust,
*Plaintiffs-Appellants,*

*v.*

T. HENRY CONSTRUCTION, INC.,
an Oregon corporation;
Stelmen Plastering, Inc.,
an Oregon corporation;
Northwest Gutter Service, Inc.,
an Oregon corporation;
Milgard Manufacturing, Inc.,
a Washington corporation;
Steve Pfenning Construction, Inc.,
an Oregon corporation;
David Farwell,
an individual,
dba David Farwell Masonry
and David Oregon Farwell;
One Cut Carpentry, LLC,
fka One Cut Carpentry, Inc.,
aka Herold's Carpentry;
and Maddox Enterprise, Inc.,
an Oregon corporation,
*Defendants,*

*and*

Keith A. LUCAS,
an individual,
dba Keith Lucas Development Properties;
and Kevin G. Mayo,
an individual,
dba KGM Construction,
*Defendants-Respondents.*

Keith A. LUCAS,
dba Keith Lucas Development Properties,
*Third-Party Plaintiff,*

*v.*

ENERGY PRODUCTS, INC.,
an Oregon corporation,
dba NW Builders Wholesale,
Ronald L. Hardy,
dba Hardy Plumbing & Heating;
JB Insulation, Inc.,
an Oregon corporation;
Kirk's Construction Unlimited,
an Oregon corporation;
Milwaukie Plumbing Co.,
an Oregon corporation,
dba MP Plumbing Co.;
Tom Pacheco,
fka Tom D. Pacheco Masonry;
and Mel Wielrich,
*Third-Party Defendants.*

Clackamas County Circuit Court
CV06060031; A136228

217 P3d 212

Peter J. Viteznik, argued the cause for appellants. With him on the brief were Kyle Sciuchetti, Lisa E. Lear, and Bullivant Houser Bailey PC. With him on the reply brief was Kilmer, Voorhees & Laurick, P.C.

Matthew J. Kalmanson argued the cause and filed the brief for respondent Keith A. Lucas.

Kenneth L. Walhood and Lisa K. Day filed the brief for respondent Kevin G. Mayo.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Plaintiffs own a house that was built for them by several contractors and subcontractors, including defendants.[1] After the house was finished, plaintiffs discovered damage to the property allegedly caused by water leakage. Sometime after that discovery, but more than eight years after the construction was substantially complete, plaintiffs brought this action against defendants, alleging breach of contract and negligence due to construction defects. Defendants moved for summary judgment on both claims, arguing that the contract claims were filed after the six-year statute of limitations had run and that the negligence claims were barred because one party to a contract cannot bring a tort action against the other party unless that action arises from the breach of some standard of care that is independent of the terms of the contract. The court granted defendants' motions. We hold that the contract claims were barred by the statute of limitations, but that the tort claims survive summary judgment because they are based on the alleged violation of a regulatory standard that is independent of the contract. We therefore affirm in part and reverse in part.

■ First, we agree with the trial court that plaintiffs' contract claims are barred by the six-year statute of limitations set forth in ORS 12.080(1). Plaintiffs argue that a 10-year statute of limitations applies to construction defect claims under ORS 12.135 and that, even if the applicable period is six years, that limitations period did not begin until plaintiffs discovered or should have discovered the water leakage. After briefing in this case was complete, we rejected indistinguishable arguments in *Waxman v. Waxman & Associates, Inc.*, 224 Or App 499, 504-12, 198 P3d 445 (2008). For the reasons stated in that case, we agree with the trial court that the applicable statute of limitations for plaintiffs' contract claims is six years from the date of breach and that no discovery rule applies. Because plaintiffs did not

---

[1] Plaintiffs brought this action in their capacity as trustees of a trust that owns the house. Defendant Keith Lucas, dba Keith Lucas Development Properties, was the general contractor. Defendant Kevin Mayo, dba KGM Construction, was the framing contractor. Several other defendants are not parties to this appeal. For convenience, we refer to the parties as "plaintiffs" and "defendants."

bring this action within that time, we reject plaintiffs' first assignment of error without further discussion.

■■    We turn to plaintiffs' assignment of error regarding their negligence claims. We begin with an overview of the legal principles that apply to the viability of tort claims by one party to a contract against the other party. Obligations specified in the terms of a contract are " 'based on the manifested intention of the parties to a bargaining transaction,' " while obligations in tort, or "duties," are " 'imposed by law— apart from and independent of promises made and therefore *apart from the manifested intention of the parties—*to avoid injury to others.' " *Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996) (quoting W. Page Keeton, *Prosser and Keeton on the Law of Torts*, § 92, 655, 656 (5th ed 1984)) (emphasis in *Conway*). In other words, a contract details the specific obligations that each party agrees to undertake with respect to the other and, if one party fails to meet an obligation, that breach results in contract liability. *Conway*, 324 Or at 237; *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992). "That is so whether the breach of contract was negligent, intentional, or otherwise." *Georgetown Realty*, 313 Or at 106.

■■    For the injured party to have a tort claim, however, that party must allege the breach of a standard of care that is independent of the contract and without reference to its specific terms.[2] As the court explained in a frequently cited passage from *Georgetown Realty*, 313 Or at 106:

"When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's

---

[2] When a contract expressly or implicitly incorporates the general "duty" to take reasonable measures to avoid foreseeable risks, that standard of care is not considered to impose an independent tort duty. *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 477, 71 P3d 574, *rev den*, 336 Or 125 (2003) (citing *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992)).

claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation."

In most cases, the "independent standard of care" derives from a "special relationship" between the contracting parties. We have also held, however, that a standard of care expressed in a statute is considered to be independent of the terms of the contract. *Butterfield v. State of Oregon*, 163 Or App 227, 235, 987 P2d 569 (1999), *rev den*, 330 Or 252 (2000) (action based on violation of Fair Labor Standards Act sounds in tort); *see also Griffin v. Tri-Met*, 318 Or 500, 507, 870 P2d 808 (1994) (ORS 659.425(1), prohibiting employment discrimination based on disability, imposes "legal duty that is imposed by law, other than a duty arising from contract or quasi-contract" (internal quotation marks omitted)).

Initially, plaintiffs argue that these precepts do not apply in construction defect cases, our opinion in *Jones v. Emerald Pacific Homes, Inc.*, 188 Or App 471, 71 P3d 574, *rev den*, 336 Or 125 (2003) to the contrary notwithstanding. They point to *Newman v. Tualatin Development Co. Inc.*, 287 Or 47, 597 P2d 800 (1979). In *Newman*, one group of plaintiffs (the "privity plaintiffs") had purchased homes directly from the defendant (builder); the other group (the "nonprivity plaintiffs") was composed of subsequent, downstream purchasers. Both groups brought an action against the defendant, alleging breach of warranty and negligent construction. *Id.* at 49. The trial court certified the proceeding as a class action. The defendant took an interlocutory appeal, arguing that the action was not appropriate for class certification because, among other reasons, the privity plaintiffs' chances of success were minimal. *Id.* at 50-51. Despite the existence of a contract between the privity plaintiffs and the defendant, the trial court affirmed the certification, concluding that, "from the evidence considered and the state of the law, plaintiffs' chances of prevailing do not appear so minimal that they should be precluded from proceeding as a class action." *Id.* at 51. From that statement, plaintiffs here infer that the court approved a negligence claim based on faulty construction

despite the existence of a contract and the absence of a non-contractual standard of care. Nothing in the *Newman* opinion, however, indicates that the court's statement, insofar as it applied to the privity plaintiffs' chances of success, referred to their negligence claim as opposed to their contract claim, and, in any event, the court might have meant that the privity plaintiffs' negligence claim could possibly succeed based on some unique aspect of the parties' relationships or some other noncontractual standard of care. It is also noteworthy that *Newman* preceded *Georgetown Realty* by 13 years.

■      Plaintiffs also rely on *Harris v. Suniga*, 344 Or 301, 180 P3d 12 (2008), another case in which the Supreme Court held that a homeowner could bring a negligence action against builders without alleging a noncontractual standard of care. The plaintiff in *Harris*, however, was a nonprivity owner with no contractual relationship to the builder; *Harris*, therefore, has no bearing on the question whether a party that *is* in contractual privity with a builder can bring a tort claim without alleging the breach of some standard of care independent of the contract. In sum, we decline to retreat from *Jones*, where we held that a homeowner who has a contractual relationship with a builder cannot bring an action against the builder in tort without establishing that the builder is obligated to a standard of care that is independent of the contract.

■      As mentioned above, the noncontractual standard of care is most often imposed by the nature of the relationship between the parties, or, in the terms that the court generally uses, a "special relationship." As we explained in *Jones*, 188 Or App at 478,

> "parties to a contract are in a 'special relationship' imposing a heightened duty of care and thereby creating potential tort liability when one party delegates to the other the authority to make important decisions with the understanding that the authority is to be exercised on behalf of and for the benefit of the authorizer."

The Supreme Court has identified several categories of relationships into which most "special relationships" fall, including those between lawyers, physicians, architects, and engineers and their clients; between principals and agents;

between trustees and beneficiaries; and, in some instances, between insurers and their insureds. *Id.* at 477. But whether a relationship between contracting parties is a "special relationship" is a functional, rather than formal, inquiry; it depends on the nature of the parties' contracts and their dealings with one another. *Id.* at 478. "[T]he crucial aspect of the relationship is not its name, but the roles that the parties assume in the particular interaction where the alleged tort and breach of contract occur." *Strader v. Grange Mutual Ins. Co.*, 179 Or App 329, 334, 39 P3d 903, *rev den*, 334 Or 190 (2002).

In the present case, plaintiffs argue that whether a "special relationship" exists is a question of fact and that, therefore, the parties' disagreement regarding whether such a relationship existed precluded summary judgment. *See generally* ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 407, 939 P2d 608 (1997) (summary judgment not appropriate unless there are no disputed issues of material fact and the moving party is entitled to prevail as a matter of law). We disagree. Where, as here, the relevant facts are not in dispute, this court may decide, as a matter of law, whether those facts establish a "special relationship." *See, e.g., Strader*, 179 Or App at 335 (affirming grant of summary judgment in the defendant's favor on the basis that the defendant insurer and the plaintiff insured were "not in the kind of relationship that gives rise to a standard of care independent of the contract terms"). Although there may be disputed facts that bear on the relationship in the present case, plaintiffs have not identified them.

Instead, they rely on the affidavit of plaintiff Janice Abraham, in which she states that plaintiffs "trusted" defendants to build their "dream" home "free from defects"; that plaintiffs "relied" on defendants' "assurances that the home was free from defects"; that plaintiffs "delegated responsibility" to defendants "to ma[k]e decisions regarding the construction budget, construction means and methods, Building Code compliance and construction cost savings"; that plaintiffs "entrusted" defendants "with responsibility to oversee the financial aspects of the building of [their] home"; that plaintiffs "relied" on defendants' "cost estimates" for the project; that defendants "promised" to use their "best skills,

efforts, and judgment" to further plaintiffs' interests; and that defendants "exercised independent judgment on [plaintiffs'] behalf concerning" all of those issues.

As defendants correctly point out, using particular adjectives to describe an arm's-length contractual relationship between parties does not transform that relationship into a "special" one. That determination is based on function, rather than form, and depends not on the words that the parties choose to describe their dealings but on the role that each plays. Here, plaintiffs have failed to show that they had "delegate[d] * * * authority [to defendants] to make important decisions with the understanding that the authority [was] to be exercised on behalf of and for the benefit of" plaintiffs. *Jones*, 188 Or App at 478. Rather, plaintiffs contracted with defendants for the construction of a home according to plaintiffs' specifications, for a fee. All change orders and subcontractor bids had to be approved by plaintiffs. In other words, each party acted on its own behalf, for its own benefit. Plaintiffs have thus failed to show that they were in a "special relationship" with defendants.

Plaintiffs fare better with their argument that "[t]he broad rule stating that parties to a contract may be liable to one another in tort does not require the existence of a special relationship"; rather, they read the case law to require only a standard of care independent of the contract, which standard can derive not only from a special relationship but also from rules such as the ones included in the Oregon Building Code. As we have discussed above, we have held that a standard of care expressed in a statute is also a standard that is independent of the terms of the contract. *Butterfield*, 163 Or App at 235; *see also Griffin*, 318 Or at 507. The same characterization applies to administrative rules. *See, e.g., Shahtout v. Emco Garbage Co.*, 298 Or 598, 601, 695 P2d 897 (1985) (administrative rule states standard of care); *Eduardo v. Clatsop Community Resource*, 168 Or App 383, 391, 4 P3d 83 (2000) (city building code establishes standard of care).

In the present case, plaintiffs have alleged, as part of their general negligence claim, that defendants' failure to meet the standard of care set out in the Oregon Building Code caused damage to their property. They have also

alleged a separate claim for "negligence *per se*." Negligence *per se*, however, is not a distinct cause of action; it is a negligence claim based on violation of a standard of care set out by statute or rule. *Gattman v. Favro*, 306 Or 11, 15 n 3, 757 P2d 402 (1988). As the Supreme Court explained in *Shahtout*, 298 Or at 601:

> "When a plaintiff (or a defendant seeking to prove negligence on plaintiff's part) invokes a governmental rule in support of that theory, the question is whether the rule, though it was not itself meant to create a civil claim, nevertheless so fixes the legal standard of conduct that there is no question of due care left for a factfinder to determine; in other words, that noncompliance with the rule is negligence as a matter of law."

To state a negligence claim based on "negligence *per se*," the plaintiff must

> "allege that (1) defendants violated a statute [or rule]; (2) that plaintiff was injured as a result of that violation; (3) that plaintiff was a member of the class of persons meant to be protected by the statute [or rule]; and (4) that the injury plaintiff suffered is of a type that the statute [or rule] was enacted to prevent."

*McAlpine v. Multnomah County*, 131 Or App 136, 144, 883 P2d 869 (1994), *rev den*, 320 Or 507 (1995) (emphasis omitted).

Plaintiffs have made the necessary allegations. They allege that defendants violated administrative rules; that the violation caused them damage; that the purpose of the Oregon Building Code is, among other things, to protect people in their position from the effects of substandard construction; and that they have suffered the kind of injury that the code was designed to prevent. The assertion regarding the purpose of the building code is correct as a matter of law. ORS 455.020, the statute authorizing promulgation of the building code, provides, in part,

> "(1) This chapter is enacted to enable the Director of the Department of Consumer and Business Services to promulgate a state building code to govern the construction * * * of buildings and other structures * * *. The state building code shall establish uniform performance standards

> providing reasonable safeguards for health, safety, welfare, comfort and security of the residents of this state *who are occupants and users of buildings*[.]"

(Emphasis added.) Further, plaintiffs' counsel states in an affidavit that she has "retained unnamed qualified experts who are available and willing to testify to admissible facts and opinions creating questions of fact regarding [defendants'] violations of the Oregon Building Code[ ] and the property damage [they] caused to the home." Thus, plaintiffs have created a genuine issue of material fact as to whether defendants have breached a standard of care that is independent of any contract and that is not merely the duty to avoid unreasonable risk of foreseeable harm. *See* ORCP 47 E. For that reason, the court erred in granting defendants' motions for summary judgment on their claim of negligence based on violation of the building code.

Reversed and remanded on negligence claim; otherwise affirmed.