Argued and submitted August 24, 2021, reversed and remanded
January 26, petition for review allowed June 23, 2022 (369 Or 855)
See later issue Oregon Reports

Christine MOODY,
individually, and in her capacity as
the Personal Representative of the Estate of
Steven "Troy" Moody, Deceased,
*Plaintiff-Appellant,*

*v.*

OREGON COMMUNITY CREDIT UNION,
aka OCCU, an Oregon entity,
association, union, or corporation et al.,
*Defendants,*

*and*

FEDERAL INSURANCE COMPANY,
an Indiana corporation,
*Defendant-Respondent.*

Lane County Circuit Court
19CV26557; A172844

505 P3d 1047

In this civil appeal, plaintiff assigns error to the trial court's rulings dismissing her negligence *per se* claims and striking her allegations of emotional distress damages against defendant. After plaintiff's husband was accidently killed on a camping trip, defendant denied insurance coverage under an accidental death policy. Plaintiff sued defendants for, among other things, negligence, alleging that defendants failed to conduct a reasonable investigation of husband's death and failed to settle her claim in good faith. Plaintiff alleged that defendants violated ORS 746.230 which prohibits certain conduct in the settlement of insurance claims. *Held*: Plaintiff adequately pleaded facts which, if true, would allow liability for negligence *per se*. ORS 746.230 creates a standard of care independent of the terms of the insurance contract. As a member of the insurance buying public, plaintiff is within the class of people protected by that statute. In addition to providing compensation upon a covered loss, a broadly recognized purpose of insurance is to provide economic and financial peace of mind to the insured. It follows that emotional distress is within the range of harms that ORS 746.230 was adopted to protect against.

Reversed and remanded.

Bradley A. Cascagnette, Judge.

Travis Eiva argued the cause and filed the briefs for appellant.

R. Daniel Lindahl argued the cause for respondent. Also on the brief were Stuart D. Jones and Bullivant Houser Bailey PC.

Before Powers, Presiding Judge, and Egan, Judge, and Landau, Senior Judge.

LANDAU, S. J.

Reversed and remanded.

**LANDAU, S. J.**

ORS 746.230 provides that an insurer may not refuse to pay claims without conducting a reasonable investigation or fail to attempt in good faith to promptly and equitably settle claims when liability is reasonably clear. In this case, plaintiff alleges that defendant Federal Insurance Company violated that statute when it unreasonably denied her claim for accidental loss of life benefits arising out of the accidental death of her husband and is therefore liable for negligence *per se*. She further alleges that she is entitled to damages for the emotional distress resulting from defendant's negligence. Defendant moved to dismiss the negligence *per se* claim and strike the allegation of damages for emotional distress on the ground that a negligence claim may not be predicated on a breach of an insurance policy. The trial court agreed and granted defendant's motions. For the reasons that follow, we conclude that the trial court erred and therefore reverse and remand.

## I.  BACKGROUND

We take the facts from the allegations of the complaint. *McLaughlin v. Wilson*, 365 Or 535, 537, 449 P3d 492 (2019). Defendant contracted to provide life insurance coverage and benefits in the amount of $3,000 to be paid on the death of plaintiff's husband, Troy. The policy further provided that, if Troy suffered an accidental loss of life, it would pay the benefit amount to plaintiff.

Troy was accidentally shot and killed by a friend on a camping trip. Plaintiff timely filed a claim with defendant, but defendant denied the claim. Defendant asserted that its policy excluded accidents caused by or resulting from the insured being under the influence and that the exclusion applied because the sheriff's toxicology report stated that there was evidence that Troy had tested positive for marijuana.

Plaintiff initiated this action, alleging that defendant was mistaken in denying benefits because Troy died because of being accidentally shot by another person, not because he had been using marijuana. Plaintiff advanced a number of claims for relief, among them a claim for breach

of contract and another for negligence *per se*, based on defendant's failure to conduct a reasonable investigation of Troy's death and its failure, in good faith, to settle her claim—all in breach of ORS 746.230(1). Plaintiff claimed economic damages in the amount of the $3,000, as well as noneconomic damages for emotional distress in the amount of $47,001.

Defendant moved to dismiss the negligence *per se* claim on the ground that Oregon does not recognize such tort claims for what is essentially a breach of contract claim. It also moved to strike the allegation of damages for emotional distress. The trial court granted the motions and entered a limited judgment dismissing the second and third claims.

Meanwhile, while the appeal was pending, the case proceeded on plaintiff's breach of contract claim. Defendant tendered the $3,000 in claimed coverage, and the trial court entered a judgment in favor of plaintiff on that claim.

## II.   ANALYSIS

Plaintiff assigns error both to the dismissal of her negligence *per se* claim and to the striking of her allegation of damages for emotional distress. In her briefing, she combines her arguments on both assignments, as does defendant in response. As the issues are necessarily intertwined, we do likewise.

Plaintiff acknowledges that, ordinarily, the remedy for a violation of the terms of a contract—including an insurance policy—is a claim for breach of contract. But, she argues, Oregon courts recognize an exception to that general rule when a breach of the contract violates a standard of care independent of the terms of the contract. Plaintiff contends that, as this court held in *Abraham v. T. Henry Construction, Inc.*, 230 Or App 564, 572, 217 P3d 212 (2009), *aff'd on other grounds*, 350 Or 29, 249 P3d 534 (2011) (*Abraham I*), a standard expressed in a statute constitutes such an independent standard of care that will support a claim for negligence *per se*. Here, plaintiff argues, defendant's breach of its policy of insurance also violated just such an independent, statutory standard of care spelled out in ORS 746.230(1). Defendant responds that the trial court was correct in dismissing the negligence *per se* claim.

In reviewing the trial court's decision to dismiss plaintiff's claims, our task is to determine whether, viewing the allegations of the complaint in the light most favorable to plaintiff, she has failed to state a claim as a matter of law. *Hernandez v. Catholic Health Initiatives*, 311 Or App 70, 72, 490 P3d 166 (2021).

As framed by the arguments of the parties, the issue before us is to determine when a party to a contract may sue another party to the same contract for negligence. Obligations specified in the terms of a contract are based on the intentions of the parties to a given transaction, while obligations in tort are imposed by law, apart from any such contractual obligations. *Abraham I*, 230 Or App at 568 (citing *Conway v. Pacific University*, 324 Or 231, 237, 924 P2d 818 (1996)). Ordinarily, if one party to the contract fails to meet a contractual obligation, the remedy is an action for breach of the contract. *Id*. If an injured party to a contract seeks to maintain a tort claim, such a claim must be based on the breach of a standard of care independent of the contract. As the Oregon Supreme Court explained in *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 106, 831 P2d 7 (1992):

> "When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract. If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation."

In some cases, that independent standard of care will arise from a special relationship between the parties. In *Georgetown*, for example, the court held that an insurer that had assumed a contractual relationship to defend an insured was in a special relationship with that insured and, as a result, was subject to tort liability for a violation of the standard of care that applies to that particular relationship. *Id*. at 110-11.

In other cases, such an independent standard of care may be expressed in a statute or administrative rule. *Abraham I* illustrates the point. In that case, the plaintiffs entered into a contract with the defendants for the construction of a house. After construction was completed, the plaintiffs discovered water leakage caused by defective construction. They sued the defendants for both breach of contract and negligence, based on the defendants' violation of the Oregon Building Code. The trial court dismissed both claims—the contract claim because it was time-barred and the negligence claim because one party to a contract generally may not bring a tort action against another party to the same contract in the absence of a special relationship creating an independent duty. 230 Or App at 567. We concluded that although the contract claim was indeed time-barred, the trial court had erred in granting summary judgment on the negligence claim. We explained that, although generally a party to a contract may not bring a tort claim against another party to the contract, an exception applies when the tort claim is predicated on a violation of a standard of care that exists independent of the contract. *Id.* at 569. We said that such an independent standard of care may derive either from a special relationship between the parties or statutes and administrative rules promulgated pursuant to statutes. *Id.* at 572. We concluded that the Oregon Building Code was such an independent standard of care sufficient to support a claim for negligence *per se*. *Id.* at 573-74.

The violation of such an independent standard of care is not all that is required to state a negligence claim against another party to a contract. A negligence claim based on a statutory violation requires that a plaintiff plead and ultimately prove that

"(1) defendants violated a statute; (2) that plaintiff was injured as a result of that violation; (3) that plaintiff was a member of the class of persons meant to be protected by the statute; and (4) that the injury plaintiff suffered is of a type that the statute was enacted to prevent."

*McAlpine v. Multnomah County*, 131 Or App 136, 144, 883 P2d 869 (1994), *rev den*, 320 Or 507 (1995).

With those legal principles in mind, we conclude that plaintiff's complaint satisfies each of the four requirements for stating a claim for negligence *per se*. First, plaintiff alleges that defendant violated a statute, specifically, ORS 746.230(1). That statute provides, in part:

"An insurer or other person may not commit or perform any of the following unfair claim settlement practices:

"(a)  Misrepresenting facts or policy provisions in settling claims;

"(b)  Failing to acknowledge and act promptly upon communications relating to claims;

"(c)  Failing to adopt and implement reasonable standards for the prompt investigation of claims;

"(d)  Refusing to pay claims without conducting a reasonable investigation based on all available information;

"(e)  Failing to affirm or deny coverage of claims within a reasonable time after completed proof of loss statements have been submitted;

"(f)  Not attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear;

"(g)  Compelling claimants to initiate litigation to recover amounts due by offering substantially less than amounts ultimately recovered in actions brought by such claimants;

"(h)  Attempting to settle claims for less than the amount to which a reasonable person would believe a reasonable person was entitled after referring to written or printed advertising material accompanying or made part of an application;

"(i)  Attempting to settle claims on the basis of an application altered without notice to or consent of the applicant;

"(j)  Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

"(k)  Delaying investigation or payment of claims by requiring a claimant or the claimant's physician, naturopathic physician, physician assistant or nurse practitioner

to submit a preliminary claim report and then requiring subsequent submission of loss forms when both require essentially the same information;

"(l)   Failing to promptly settle claims under one coverage of a policy where liability has become reasonably clear in order to influence settlements under other coverages of the policy;

"(m)   Failing to promptly provide the proper explanation of the basis relied on in the insurance policy in relation to the facts or applicable law for the denial of a claim; * * *"

ORS 746.230(1).[1]

Plaintiff alleges that defendant violated paragraphs (d) and (f) in failing to pay her claim without conducting a reasonable investigation and in failing to settle in good faith after liability became reasonably clear. It is uncontested that the statute applies to defendant. Under *Abraham I*, the statute thus provides the basis for plaintiff's negligence *per se* claim. Second, plaintiff alleges that she was injured as a result of defendant's violation of that statute. Third, plaintiff is a member of the class of persons meant to be protected by ORS 746.230(1). ORS 731.008 provides that the Insurance Code was enacted "for the protection of the insurance-buying public," and ORS 746.230(1) is part of that Insurance Code. ORS 731.004 (ORS chapter 746 "may be cited as the Insurance Code"). Fourth, plaintiff contends that the damages that she claims—both the $3,000 in denied coverage and the damages for her emotional distress—are the type of damages that the statute was enacted to prevent the insurance-buying public from suffering. It is not clear to us that, at least at this point, defendant's denial of the $3,000 in coverage may serve as the basis for plaintiff's claim, given that it has since paid that amount. But, as we explain further below, it appears to us that the emotional distress that plaintiff alleges that she suffered is the sort of harm that ORS 746.230 was intended to prevent.

Defendant nevertheless argues that the complaint fails as a matter of law for four reasons, none of which we

---

[1] This case and appeal arose from the accident in 2017. ORS 746.230 was amended in 2017 and 2019 in ways that are not material to our analysis. For convenience, we cite and discuss the present version of the statute.

find persuasive. First, defendant argues that plaintiff errs in relying on *Abraham I* for the proposition that the violation of a statute may support a claim for negligence *per se*. According to defendant, *Abraham I* "is not precedential since the Supreme Court used a different rationale to decide the case." As noted above, in *Abraham I*, we concluded that the Oregon Building Code created a standard of care independent of the contract between the plaintiffs and the contractors they hired to build their home for the purposes of the plaintiffs' negligence *per se* claim. 230 Or App at 573-74. The defendant contractors petitioned for review, arguing that we erred; according to the defendants, only a special relationship may create an independent standard of care for purposes of stating a negligence *per se* claim. *Abraham v. T. Henry Construction, Inc.*, 350 Or 29, 36, 249 P3d 534 (2011). The Supreme Court affirmed, "on somewhat different grounds." *Id.* at 33. The court determined that it was not necessary to decide whether, apart from a special relationship between the parties, a statute or regulation may establish a standard of care for negligence *per se* purposes. *Id.* at 36. In the court's view, the plaintiffs' claim was adequately predicated on the common-law duty to avoid foreseeable harm, because "the terms of the contract do not purport to alter or eliminate defendants' liability for the property damage plaintiffs claim to have suffered." *Id.* Thus, nothing in the Supreme Court's decision suggests that our decision in *Abraham I* was incorrect. The court decided that it did not need to address that question. Defendant cites no authority for the proposition that, when the Supreme Court affirms a decision of ours on a different ground, our opinion loses any precedential value, and we are aware of none. We reject defendant's argument without further discussion.

Second, defendant argues that, in any event, *Abraham I* cannot be read to stand for the proposition that an applicable statute, by itself, may establish the standard of care for the purposes of a negligence *per se* claim. Defendant argues that, for any negligence *per se* claim to stand, a plaintiff must first be able to allege a common-law negligence claim. Only then, the insurer contends, may a plaintiff add a claim for negligence based on the violation of a statute. Defendant argues that, because plaintiff here has

failed to allege a common-law negligence claim independent of her negligence *per se* claim, the latter fails as a matter of law. In support for that curious argument, defendant cites a footnote in the Supreme Court's decision in *Deckard v. Bunch*, 358 Or 754, 370 P3d 478 (2016).

In *Deckard*, the plaintiff was injured when he was hit by a motor vehicle driven by an intoxicated driver who was driving home from a social engagement where the host had served the driver multiple alcoholic drinks. The plaintiff sued the social host under ORS 471.565(2), which provides that a person serving alcohol is not liable for damages caused by intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that, among other things, the patron or guest was visibly intoxicated at the time. The defendant social host moved to dismiss, arguing that the statute did not create a statutory right of action. The trial court agreed and dismissed the case, and the Supreme Court affirmed. *Deckard*, 358 Or at 756-57. Based on the text and history of the statute, the court concluded that the legislature intended the statute to limit the liability of those who serve alcohol, not to create a new private right of action. *Id.* at 785-86, 793. As a predicate for its discussion of the issue, the court described some background principles of statutory liability. *Id.* at 760-61. And in a footnote to that discussion, the court noted that negligence *per se* is distinct from statutory liability. The court explained that, "[w]hen a negligence claim otherwise exists, and a statute or rule defines the standard of care expected of a reasonably prudent person under the circumstances, a violation of that statute or rule establishes a presumption of negligence." *Id.* at 761 n 6.

Based on that footnote, defendant argues that the Supreme Court requires that, to state a claim for negligence, a common-law claim must "otherwise exist." In our view, defendant reads more into the footnote than a fair reading will bear. All the court said in *Deckard* was that, if all the other elements of a negligence claim otherwise exist, a statute or rule may supply the standard of care for a negligence *per se* claim. When pressed at oral argument, defendant could not cite a single appellate court decision holding that an independently alleged common-law negligence claim

is a necessary precondition for alleging a negligence *per se* claim. We reject that argument as well.

Third, defendant argues that, even if a plaintiff may state a claim for negligence *per se* based solely on the violation of a statute, plaintiff in this case may not do so because the Supreme Court has determined that ORS 746.230(1) does not provide a cause of action for damages. In defendant's view, the Oregon Supreme Court's decision in *Farris v. U.S. Fid. and Guar. Co.*, 284 Or 453, 587 P2d 1015 (1978), forecloses any negligence *per se* claim based on a violation of ORS 746.230(1). Defendant reads too much into the decision as well. In *Farris*, the plaintiffs brought an action for damages resulting from their insurer's denial of liability insurance coverage. The plaintiffs prevailed at trial and were awarded economic damages, noneconomic damages for emotional distress, and punitive damages. The defendant insurer appealed, arguing that punitive damages may not be awarded on a breach of contract claim. The plaintiffs responded that common-law principles of contract liability allow recovery of damages for emotional distress when the insurer is guilty of bad faith in denying coverage.

The court began by reviewing the general rule that the breach of a contract resulting in pecuniary loss will not support a claim for emotional distress damages. *Id*. at 455-56. The court then noted that, nevertheless, such emotional distress damages may be recovered if the claim sounds in tort, rather than contractual liability. *Id*. at 456. In that regard, the court noted that the legislature had enacted ORS 746.230, which prohibits an insurer from unreasonably denying coverage, and that "[i]t is possible to contend that defendant's violation of the statute is a tort, and therefore, plaintiffs are entitled to recovery for emotional distress." *Id*. at 458. But, the court added, "[i]*t is not our understanding that plaintiffs make this contention.*" *Id*. (emphasis added). In other words, the plaintiffs in *Farris* did *not* make a claim of statutory liability for the defendant's violation of ORS 746.230. For reasons unexplained, the court went ahead and discussed whether that statute could support a claim for statutory liability, which might justify an award of damages for emotional distress. In what was plainly *dictum* then, the court said that "[t]here is nothing to indicate that the legislature intended,

when it prohibited certain claims settlement practices in ORS 746.230, that actions for breach of insurance contracts would be transformed, in all of the covered instances, into tort actions with a resulting change in the measure of damages." *Id*. The court noted that another statute provided for an action in the name of the State of Oregon to obtain civil penalties for violations, but that there was no mention of a private right of action. In that context, the court observed that "had the legislature intended" to provide for emotional distress damages, "it would have so provided." *Id*.

Assuming for the sake of argument that the court's *dictum* in *Farris* answered the question whether ORS 746.230 creates statutory liability for the violation of its provisions,[2] the fact remains that this case poses a different question—namely, whether the statute provides a standard of care for purposes of a claim for negligence *per se*. Nothing in *Farris* even mentioned that issue. And defendant errs in assuming that a decision concerning whether an enactment creates statutory liability is dispositive of whether the same statute may supply a standard of care in a negligence *per se* case. As the Supreme Court took some pains to emphasize in *Bob Godfrey Pontiac v. Roloff*, 291 Or 318, 630 P2d 840 (1981), there is an important distinction between the role of a statute in negligence *per se* cases and statutory liability cases. In the former cases, the test is whether the plaintiff is a member of the class of persons for whose benefit the legislation was enacted and whether the type of harm suffered was the kind the legislation was intended to prevent. *Id*. at 325-26. In the latter cases, the test is different; it is whether the legislature intended to create a tort action for statutory liability. *Id*. at 326. Whether the legislature intended its enactment of a law to create direct statutory liability does not preclude courts from determining that it is appropriate to treat the enactment as a standard of care for purposes of stating a claim for negligence *per se*. *Farris*, in other words, is not relevant here.

_____

[2] We appear to have endorsed that assumption. *See, e.g.*, *Richardson v. Guardian Life Ins. Co.*, 161 Or App 615, 623-24, 984 P2d 917 (1999) (violations of ORS 746.230 "are not independently actionable," citing *Farris*); *Employers' Fire Ins. v. Love It Ice Cream*, 64 Or App 784, 790, 670 P2d 160 (1983) (violation of ORS 746.230 "does not give rise to a tort action," citing *Farris*).

Finally, defendant contends that, if nothing else, plaintiff's negligence *per se* claim fails because it alleges noneconomic damages for the emotional distress resulting from the insurance company's violations of ORS 746.230(1). According to defendant, the Supreme Court in *Farris* held that avoiding emotional distress was not one of the purposes of enacting that law. Once again, though, defendant reads too much into *Farris*.

In *Farris*, the court did observe that "[t]he statutes express no public policy which would promote damages for emotional distress. Concern about the insured's peace of mind does not appear to be the gravamen of the statutory policy." 284 Or at 458. As we have noted, however, the court's brief observation was in no way a holding; it was plainly *dictum*. We have held in a number of prior cases that "*dictum*—even Oregon Supreme Court *dictum*—about the construction of a statute has no particular precedential force." *Godfrey v. Fred Meyer Stores*, 202 Or App 673, 680, 124 P3d 621 (2005), *rev den*, 340 Or 672 (2006); *see also Sundermier v. PERS*, 269 Or App 586, 594, 344 P3d 1142, *rev den*, 357 Or 415 (2015) ("when * * * the court mentions an interpretation of a statute by way of *dictum*, that interpretation is not binding"). The Supreme Court likewise does not regard its prior suggestions about what a statute means in *dicta* as having any precedential value. *SAIF v. Allen*, 320 Or 192, 204, 881 P2d 773 (1994) ("[T]his court has declined to apply the doctrine of *stare decisis* to *dictum* in earlier statutory construction cases.").

Aside from that, what the court said in *Farris* was directed at a different question. Again, the court was concerned in that case with whether the legislature, in enacting ORS 746.230, intended to create a private right of action for damages—including emotional distress damages. The court simply noted that the plain terms of the statute indicated that, while the violation of ORS 746.230 could prompt an action in the name of the State of Oregon for civil penalties, no other direct remedy appeared to have been contemplated. "There is nothing to indicate," the court said, "that the legislature intended, when it prohibited certain claims settlement practices in ORS 746.230, that actions for breach of insurance contracts would be transformed, in all of the

covered instances, into tort actions with a resulting change in the measure of damages." *Farris*, 284 Or at 458.

The issue here is different. The question whether the legislature intended to create a statutory cause of action is separate from the question of whether the violation of a statute may support a negligence *per se* claim. *See Bob Godfrey Pontiac*, 291 Or at 325-26 (describing distinction). As pertinent here, the question is whether the type of harm that plaintiff suffered is the type of harm that the legislature wanted the statute to prevent. *Id*. The fact that the legislature may not have intended to create a private right of action for recovery of emotional distress damages does not necessarily mean that the legislature did not enact ORS 746.230, at least in part, to prevent such emotional distress from occurring.

With that in mind, we turn to the statute. At the outset, we note that an elementary principle of insurance law is that insurance policies do not merely provide for the payment of funds in case of loss; they also provide the policyholder peace of mind. *See, e.g.*, 14 *Couch on Ins.* § 198:4 n 1 (3d ed 2021) ("security and peace of mind are principal benefits of insurance" (citing *National Sur. Corp. v. Immunex Corp.*, 176 Wash 2d 872, 297 P3d 688 (2013))); *Masood v. Safeco Ins. Co. of Oregon*, 275 Or App 315, 361, 365 P3d 540 (2015), *rev den*, 359 Or 525 (2016) (quoting insurance company website marketing replacement cost policy to provide "peace of mind").[3] The Oregon Supreme Court recognized that

---

[3] The idea that one of the principal benefits of insurance is peace of mind is well-nigh universally recognized in the case law around the country. *See, e.g.*, *Amerigraphics, Inc. v. Mercury Casualty Co.*, 182 Cal App 4th 1538, 1562, 107 Cal Rptr 3d 307, 327 (2010) ("an insured * * * purchases insurance precisely to buy peace of mind and security"); *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 NY3d 187, 194, 886 NE2d 127, 131 (2008) ("An insured may also bargain for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe."); *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich 401, 441, 295 NW2d 50, 65 (1980) ("Among the considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide." (Quoting *Crisci v. Security Ins. Co. of New Haven, Conn.*, 66 Cal 2d 425, 434, 58 Cal Rptr 13, 19 (1967).)); *Andrew Jackson Life Ins. Co. v. Williams*, 566 So 2d 1172, 1179 n 9 (Miss 1990) ("[A]n insured bargains for more than mere eventual monetary proceeds of a policy; insureds bargain for such intangibles as risk aversion, peace of mind, and certain and prompt payment of the policy proceeds upon submission of a valid claim."); *Ainsworth v. Combined Ins. Co. of Am.*, 104 Nev 587, 592, 763 P2d 673, 676 (1988) ("A consumer buys insurance for security,

principle in *Farris*, noting that "insurance contracts * * * are made for economic and financial peace of mind." 284 Or at 465.[4] A corollary to that principle is that statutes regulating the business of insurance—notice of cancellation requirements, for instance—are likewise intended to ensure peace of mind for policyholders. *See, e.g.*, 43 Am Jur 2d *Insurance* § 385 (2021) ("The primary purpose of such statutes is to ensure peace of mind for a policyholder."). Thus, when the Oregon legislature enacted the Insurance Code "for the protection of the insurance-buying public," ORS 731.008, we take that to mean that the legislature enacted the code to ensure that the insurance-buying public gets what it pays for, including the peace of mind that is a principal benefit of an insurance policy.

That certainly appears to be the point of a number of the provisions of ORS 746.230, which are directed at unfair claim settlement practices that implicate not only adverse economic consequences to the policyholder but also the stresses of dealing with insurance company bad faith and delaying tactics. Paragraphs (1)(b), (c), (e), and (f), for example, prohibit insurers from "failing to acknowledge and act promptly upon communications," failing to adopt procedures "for the prompt investigation of claims," "failing to affirm or deny coverage of claims within a reasonable time," all emphasizing the need for insurers to "promptly"

protection, and peace of mind."); *Roach v. Atlas Life Ins. Co.*, 769 P2d 158, 162 (Okla 1989) (purpose of purchasing insurance is "the peace of mind and security which it provides in the event of loss"); *Beck v. Farmers Ins. Exch.*, 701 P2d 795, 802 (Utah 1985) ("[I]t is axiomatic that insurance frequently is purchased not only to provide funds in case of loss, but to provide peace of mind for the insured or his beneficiaries."); *National Sur. Corp. v. Immunex Corp.*, 176 Wash 2d 872, 878, 297 P3d 688, 691 (2013) ("[S]ecurity and peace of mind are principal benefits of insurance."); *Miller v. Fluharty*, 201 W Va 685, 694, 500 SE2d 310, 319 (1997) ("[A] policyholder buys an insurance contract for peace of mind and security, not financial gain. * * * [A]ll policyholders * * * should get their proceeds promptly without having to pay litigation fees to vindicate their rights."); *Estate of Plautz v. Time Ins. Co.*, 189 Wis 2d 136, 147, 525 NW2d 342, 347 (Wisc Ct App 1994) (purpose of insurance is "the peace of mind and security it provides in the event of loss").

[4] The court in *Farris* rejected the idea that, because peace of mind is a principal purpose of insurance, Oregon law should allow emotional distress damages resulting from a breach of the policy. 284 Or at 465. Whether emotional distress damages should be allowed for breach of contract, of course, is a different question from merely recognizing—as the court did in that case—that one of the purposes of purchasing insurance is to obtain peace of mind.

communicate with, investigate, and settle claims. Paragraph (f) prohibits failing to do so "in good faith." And paragraph (g) prohibits "compelling claimants to initiate litigation" to obtain the benefits to which they are entitled. Violations of those provisions certainly have economic consequences. But it cannot be denied that such violations commonly have significant emotional consequences for policyholders as well. The legislature may well have declined to provide a private right of action for damages when it enacted ORS 746.230. But, especially given that the very nature of insurance is that it is purchased to ensure peace of mind, it is hard to imagine that the legislature did not intend the law, at least in part, to prevent policyholders from being forced to experience the stress of dealing with unfair insurance claim settlement practices.

We conclude that the trial court erred in dismissing plaintiff's negligence *per se* claim and striking her allegation of emotional distress damages.

Reversed and remanded.