754 March 10, 2016 No. 15

IN THE SUPREME COURT OF THE
STATE OF OREGON

Casey J. DECKARD,
*Respondent on Review,*

*v.*

Diana L. BUNCH,
*Defendant,*

*and*

Jeffrey N. KING,
as Personal Representative of
the Estate of Roland King, Deceased,
*Petitioner on Review.*

(CC 102298; CA A151792; SC S062948)

On review from the Court of Appeals.*

Argued and submitted September 10, 2015.

Thomas M. Christ, Cosgrave Vergeer Kester, LLP, Portland, argued the cause and filed the brief for petitioner on review.

Brent W. Barton, The Barton Law Firm PC, Newport, argued the cause and filed the brief for respondent on review. With him on the brief was William A. Barton.

Jeffrey D. Eberhard, Smith Freed & Eberhard, P.C., Portland, filed a brief on behalf of *amicus curiae* Smith Freed & Eberhard, PC.

Kristian Roggendorf, Roggendorf Law LLC, Lake Oswego, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

––––––––––––––
* Appeal from Lincoln County Circuit Court, Charles P. Littlehales, Judge. 267 Or App 41, 340 P3d 655 (2014).

** Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

BREWER, J.

The decision of the Court of Appeals is reversed, and the judgment of the circuit court is affirmed.

**BREWER, J.**

This case presents the issue of whether ORS 471.565(2) provides an independent statutory right of action against a social host who served alcohol to a visibly intoxicated guest, who in turn caused injuries to a third party. Plaintiff, who was injured in a motor vehicle accident, brought this action against the driver of the other vehicle, Bunch, and the social host who served that driver.[1] Plaintiff asserted two claims against the social host, King: One for common-law negligence, and the second, which is our primary focus here, for statutory liability. In the common-law negligence claim, plaintiff alleged that King (defendant) was negligent in serving alcohol to his visibly intoxicated guest at his home when it was reasonably foreseeable that she would drive her vehicle and cause injury to persons on the roadway.[2] In his statutory liability claim, plaintiff alleged that defendant was statutorily liable for serving alcohol to the guest in violation of ORS 471.565(2).[3]

Defendant filed a pretrial motion to dismiss plaintiff's statutory liability claim under ORCP 21 A(8) for failure to allege ultimate facts sufficient to state a claim for relief. The trial court granted the motion to dismiss, and the case was tried solely on the common-law negligence claim,

---

[1] The other driver, Bunch, is not a party to this appeal.

[2] After the accident, King passed away. This action was brought against the personal representative of King's estate. We refer to both King and the personal representative as "defendant."

[3] ORS 471.565(2) provides:

"A person licensed by the Oregon Liquor Control Commission, person holding a permit issued by the commission or social host is not liable for damages caused by intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that:

"(a) The licensee, permittee or social host served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

"(b) The plaintiff did not substantially contribute to the intoxication of the patron or guest by:

"(A) Providing or furnishing alcoholic beverages to the patron or guest;

"(B) Encouraging the patron or guest to consume or purchase alcoholic beverages or in any other manner; or

"(C) Facilitating the consumption of alcoholic beverages by the patron or guest in any manner."

resulting in a jury verdict for defendant.[4] Plaintiff appealed, assigning error to the dismissal of the statutory liability claim. The Court of Appeals reversed. *Deckard v. Bunch*, 267 Or App 41, 340 P3d 655 (2014). That court concluded that, in enacting ORS 471.565(2), the legislature intended to impose statutory liability on social hosts for serving visibly intoxicated guests; the court also rejected defendant's argument that any error in dismissing the statutory liability claim was rendered harmless by the jury instructions that the trial court gave. *Id*. at 51-54. We granted review to determine whether ORS 471.565(2) provides a statutory liability claim against alcohol providers that exists independently of a claim for common-law negligence. For the reasons that follow, we conclude that it does not. We therefore reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

## I.   FACTS AND PROCEDURAL HISTORY

On review of the trial court's dismissal of plaintiff's statutory liability claim pursuant to ORCP 21 A(8), "we accept all well-pleaded allegations of the complaint as true and give plaintiff[] the benefit of all favorable inferences that may be drawn from the facts alleged." *Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992), *recons den*, 315 Or 308 (1993). Plaintiff alleged in his complaint that, shortly before the accident, Bunch was at defendant's house, where she consumed a number of alcoholic drinks. Plaintiff further alleged that Bunch was intoxicated when her vehicle subsequently crossed the center lane of traffic and collided head-on with plaintiff's vehicle, causing plaintiff to sustain serious injuries. In his statutory liability claim, plaintiff alleged that defendant was negligent "in serving and/or providing alcohol to [Bunch] when she was visibly intoxicated in violation of ORS 471.565."

In his motion to dismiss, defendant argued that ORS 471.565 did not create an independent statutory liability claim, but, rather, operated as a "shield" imposing limitations on common-law claims against commercial and

---

[4] The jury found Bunch liable and awarded damages to plaintiff.

social providers of alcohol.[5] The trial court agreed with that proposition and granted the motion to dismiss.

On appeal after the jury rendered a verdict for defendant on the common-law negligence claim, plaintiff argued that the trial court erred in dismissing the statutory liability claim on the ground that this court previously has interpreted ORS 471.565 and its predecessor statutes as providing a statutory right of action to protect motorists who are injured by intoxicated drivers. Defendant responded that the statute does not create statutory liability but, instead, limits liability by placing conditions on the right to recover at common law. Alternatively, defendant argued that, even if the trial court erred in dismissing the statutory liability claim, the error was harmless because the jury was instructed that defendant was liable for common-law negligence if he served alcohol to Bunch while she was intoxicated—the same instruction that plaintiff would have been entitled to on the statutory liability claim.

The Court of Appeals reversed the trial court's dismissal of the statutory liability claim. *Deckard*, 267 Or App at 43. After discussing the legislature's enactment of *former* ORS 30.950 (1979), *renumbered as* ORS 471.565 (2001), subsequent amendments to the statute, and this court's case law on the subject, the Court of Appeals concluded that "the legislature intended to create statutory liability" and that plaintiff's claim arose from the particular risk that the legislature addressed—the risk of injury to a third party by a drunk driver who was served alcohol while visibly intoxicated. *Id*. at 51-52. Accordingly, the court held that the trial court had erred in dismissing the statutory liability claim; the court further concluded that the error was not harmless. *Id*. at 52, 54.

On review, the parties renew their arguments before the trial court and the Court of Appeals. In this case, plaintiff already had a common-law negligence claim; a host may be liable for serving a visibly intoxicated guest who drives a car and injures a third person. *See Campbell v. Carpenter*,

---

[5] King also moved to dismiss any claim for negligence *per se*. Plaintiff responded that he had not alleged a claim for negligence *per se* and conceded that such a claim did not exist.

279 Or 237, 243-44, 566 P2d 893 (1977) (serving alcohol to visibly intoxicated patron amounted to common law negligence where tavern owner reasonably could have foreseen that intoxicated patron would drive from tavern and injure others off of premises). Nevertheless, plaintiff contends that he also has a statutory claim that permits him to hold defendant liable for that same conduct. Plaintiff seeks the benefit of a statutory claim because he understands that, in a statutory claim, he need not prove foreseeability. Plaintiff asserts that the text, context, and legislative history of ORS 471.565 indicate that the legislature intended to create a statutory liability claim that does not require proof of foreseeability. Defendant responds that, when viewed through the proper interpretive lens, the statute does not create such a statutory liability claim against providers of alcohol.

As explained below, we conclude that, when it enacted *former* ORS 30.950 (1979), the predecessor statute to ORS 471.565, the 1979 legislature intended to approve the common-law negligence standard for alcohol provider liability previously established by this court. We further conclude that there is no basis to infer that that legislative assembly impliedly intended to create a separate statutory right of action with elements different from the common-law negligence standard. Finally, we conclude that no subsequent amendments to the statute altered that intent.

## II.   ANALYSIS

### A.   *Statutory Liability*

Statutory liability "arises when a statute either expressly or impliedly creates a private right of action for the violation of a statutory duty." *Doyle v. City of Medford*, 356 Or 336, 344, 337 P3d 797 (2014) (citing *Nearing v. Weaver*, 295 Or 702, 670 P2d 137 (1983)). A statutory liability claim "allows recovery of damages if the plaintiff can show that the damages suffered came about as a result of the violation of a statute which the legislature passed intending to give recourse to a group of plaintiffs, which includes the plaintiff then seeking redress under the terms of the statute." *Bellikka v. Green*, 306 Or 630, 636, 762 P2d 997 (1988). In synthesis, to prove a claim for statutory liability, the plaintiff must establish that: (1) a statute imposed a duty

on the defendant; (2) the legislature expressly or impliedly intended to create a private right of action for violation of the duty; (3) the defendant violated the duty; (4) the plaintiff is a member of the group that the legislature intended to protect by imposing the duty; and (5) the plaintiff suffered an injury that the legislature intended to prevent by creating the duty.

Because the issue is one of legislative intent, the determination of whether an enactment created statutory liability is a matter of statutory interpretation; thus, when a statute prescribing a duty does not expressly indicate whether the legislature intended to create statutory liability to enforce the duty, we consider whether such intent is implied by examining "the text, context, or legislative history of the statute creating the duty." *Doyle*, 356 Or at 344-45; *see also* [State v. Gaines](#), 346 Or 160, 171-73, 206 P3d 1042 (2009) (setting out methodology).

In its earlier decisions—especially in decisions pre-dating the adoption of our current statutory interpretation methodology—this court sometimes emphasized two factors that it deemed significant to the implied legislative intent inquiry: (1) whether the statute refers to civil liability in some way, *Chartrand v. Coos Bay Tavern*, 298 Or 689, 696, 696 P2d 513 (1985); *Nearing*, 295 Or at 707; and (2) whether the statute provides no express remedy, civil or otherwise, for its violation and, therefore, there would be no remedy of any sort unless the court determined that the legislature impliedly created one or the court itself provided one, *Chartrand*, 298 Or at 696; *Nearing*, 295 Or at 708-11. However, those factors are neither exclusive nor talismanic, and, in some instances—including, as we shall see, in this case—they may not advance the analysis very far. Instead, it bears reiteration that the proper methodology for determining whether the legislature (either expressly or by implication) intended to create a right of action for enforcement of a statutory duty is the familiar holistic framework applicable to all statutory interpretation problems—careful examination of the statutory text, context, and legislative history.

To further set the stage for our analysis, we briefly compare the roles that the concept of foreseeability plays

in statutory liability claims and common law negligence claims.[6] To impose liability in a common law negligence claim, a court must conclude that the conduct at issue "unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987). In that formulation, foreseeability plays at least two roles—it determines (1) whether the conduct created a foreseeable risk to a protected interest such that the defendant may be held liable for that conduct—a concept that has been referred to as "duty"; and (2) whether the defendant may be held liable to plaintiff for the particular harm that befell the plaintiff—a concept that has been referred to as "legal" or "proximate" cause. The roles that foreseeability plays are not always distinct and they may overlap.

As noted, statutory liability arises from the enactment of a statute that effectuates a legislative intent to create a right of action to enforce a statutory duty. It need not include particular elements of a negligence claim; thus, for example, if a violation is proven, it ordinarily does not matter whether the defendant acted reasonably under the circumstances. *Bellikka*, 306 Or at 650; *Gattman v. Favro*, 306 Or 11, 15, 757 P2d 402 (1988).[7] The role that foreseeability

---

[6] "Negligence *per se*" is different still. It is a shorthand descriptor "for a negligence claim in which the standard of care is expressed by a statute or rule." *Abraham v. T. Henry Construction, Inc.*, 350 Or 29, 35 n 5, 249 P3d 534 (2011) (citing *Shahtout v. Emco Garbage Co.*, 298 Or 598, 601, 695 P2d 897 (1985)). When a negligence claim otherwise exists, and a statute or rule defines the standard of care expected of a reasonably prudent person under the circumstances, a violation of that statute or rule establishes a presumption of negligence. *Barnum v. Williams*, 264 Or 71, 74-79, 504 P2d 122 (1972). Once a violation is proven, the burden shifts to the violator to prove that he or she acted reasonably under the circumstances. *Resser v. Boise-Cascade Corporation*, 284 Or 385, 392, 587 P2d 80 (1978). A statute that sets a standard of care addresses only one element of a negligence claim; other elements remain unaffected and must be established.

[7] In fact, a claim created by the legislature is not necessarily even a tort claim. In *Bellikka*, the court discussed the statutory claim for violations of the Oregon Residential Landlord and Tenant Act (ORLTA) recognized in *Brewer v. Erwin*, 287 Or 435, 600 P2d 398 (1979), *abrogated by McGanty v. Staudenraus*, 321 Or 532, 901 P2d 841 (1995). *Bellikka*, 306 Or at 634-35. In *Brewer*, the court concluded, from the fact that the ORLTA provided that it "shall be so administered that an aggrieved party may recover appropriate damages," that the legislature intended to create a civil claim for damages. In *Bellikka*, the court observed that "[s]tatutory liability is not necessarily 'tort' liability," 306 Or at 635, and explained that the claim permitted in *Brewer* "allows recovery of damages if the plaintiff can show that the damages suffered came about as a result of

will play in a statutory liability claim, if any, will depend on legislative intent; that is, whether foreseeability is an element of a statutory claim depends not on the fact that the claim is established by statute, but on whether the legislature intended that foreseeability be an element of the claim that it creates. If, for instance, the legislature imposes a duty to engage in conduct or refrain from conduct and intends to create a statutory claim for breach of that duty, then the legislature also may intend not to require that the plaintiff prove foreseeability as a concept that establishes a duty. The legislature already may have determined that, when a defendant's conduct violates the statute, that conduct creates a foreseeable risk to persons in the plaintiff's position, or that foreseeability is not an element of the statutory claim. *See Gattman*, 306 Or at 15 (so holding).

A conclusion that the legislature intended to dispense with foreseeability as a concept that establishes duty does not, however, necessarily mean that the legislature also intended to dispense with foreseeability as a concept that establishes the limits of a defendant's liability. Whether a plaintiff must allege and prove that the harm that befell the plaintiff was foreseeable will depend on the statute in question. For instance, if a statute indicates a particular harm that the statute is intended to prevent, and the plaintiff alleges that she suffered harm of that type, there may be no need for the plaintiff to allege and prove that that harm was foreseeable. In contrast, where a statute does not indicate the type of harm that it is intended to remedy or where the harm that the plaintiff alleges is attenuated, then the plaintiff may be required to allege and prove that the harm that the plaintiff suffered was reasonably foreseeable.

With the foregoing principles in mind, we turn to the statute at hand.

B.    *ORS 471.565*

As discussed in greater detail below, this court has examined ORS 471.565 and its predecessor statutes

---

the violation of a statute which the legislature passed intending to give recourse to a group of plaintiffs, which includes the plaintiff then seeking redress under the terms of the statute." *Id*. at 636. Thus, the court looked to the statute that created the claim to determine its elements.

on several previous occasions. We have not, however, construed the statute to resolve the issue before us under our statutory interpretation methodology described in *Gaines*. Accordingly, we turn to that task; we begin with the statute's text and context, and then consider the legislative history.

    1.   *Text and Context*

        ORS 471.565 provides:

    "(1)   A patron or guest who voluntarily consumes alcoholic beverages served by a person licensed by the Oregon Liquor Control Commission, a person holding a permit issued by the commission or a social host does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated. ***

    "(2)   A person licensed by the Oregon Liquor Control Commission, person holding a permit issued by the commission or social host is not liable for damages caused by intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that:

    "(a)   The licensee, permittee or social host served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

    "(b)   The plaintiff did not substantially contribute to the intoxication of the patron or guest by:

    "(A)   Providing or furnishing alcoholic beverages to the patron or guest;

    "(B)   Encouraging the patron or guest to consume or purchase alcoholic beverages or in any other manner; or

    "(C)   Facilitating the consumption of alcoholic beverages by the patron or guest in any manner."

        According to defendant, the statutory text does not indicate when an alcohol provider is liable for serving alcohol to a guest who then injures third parties; instead, it indicates when an alcohol provider is not liable. In defendant's view, subsection (1) provides that a patron or guest who voluntarily drinks "does not have a cause of action" against an alcohol provider "even though" the patron or

guest was served while visibly intoxicated, and subsection (2) states that an alcohol provider is "not liable" for injuries that a patron or guest inflicts on a third party off-premises "unless" the patron or guest was served while visibly intoxicated. Defendant argues that, instead of creating liability, those subsections impose restrictions on whatever liability an alcohol provider may have apart from ORS 471.565, including under the common law.

With regard to the context of the statute, defendant observes that ORS 471.565 does not impose a duty on alcohol providers not to serve alcohol to visibly intoxicated patrons and guests. Instead, that duty is imposed by another statute, ORS 471.410(1), which provides that a "person may not sell, give or otherwise make available any alcoholic liquor to any person who is visibly intoxicated." Moreover, defendant notes that this court previously has held that the duty imposed by ORS 471.410(1)[8] not to serve alcohol to visibly intoxicated persons does not create an appropriate standard of care for imposing liability based on negligence *per se*. *See Stachniewicz v. Mar-Cam Corporation*, 259 Or 583, 585-88, 488 P2d 436 (1971), *overruled in part on other grounds by Davis v. Billy's Con-Teena, Inc.*, 284 Or 351, 356 n 4, 587 P2d 75 (1978).

In response, plaintiff argues that both the text and context of ORS 471.565 indicate that the legislature intended to create statutory liability. According to plaintiff, the statute's text contemplates liability twice, albeit in reverse form, in that subsection (1) states when a patron or guest "does not have a cause of action, based on statute or common law," and subsection (2) states when an alcohol provider will be "liable for damages" by setting out the criteria for when they will not be liable. Plaintiff notes that "[s]uch reasoning by negative implication frequently has been a focal point of this court's statutory liability decisions." *See Doyle*, 356 Or at 357 n 10 (citing *Scovill v. City of Astoria*, 324 Or 159, 169,

---

[8] When the court issued several of the relevant decisions cited in this opinion, the statute was numbered ORS 471.410(3). To avoid confusion, we cite and quote to the current version of the statute, ORS 471.410(1) (2015), throughout this opinion because the renumbering effected by the 1977 amendment does not affect our analysis. *See* Or Laws 1977, ch 814, § 1.

921 P2d 1312 (1996); *Chartrand*, 298 Or at 695-96; *Nearing*, 295 Or at 708-10).

With respect to the statute's context, plaintiff argues that subsection (1) bars all claims arising from a person's voluntary intoxication, whether "based on statute or common law." In plaintiff's view, the fact that subsection (2) does not contain similar wording suggests that the legislature intended to preserve both common-law and statutory claims. In response to defendant's argument that the duty not to serve visibly intoxicated persons is imposed by ORS 471.410(1), not ORS 471.565, plaintiff argues that both statutes impose such a duty, but the scope of that duty—and whether its violation imposes liability—is different depending on the presenting circumstances.

We observe, initially, that ORS 471.565 does not expressly create a private right of action, and plaintiff does not contend otherwise. *Compare* ORS 471.565 *with e.g.*, ORS 30.780 ("Any person violating [the anti-gambling statutes] *shall be liable in a civil suit* for all damages occasioned thereby." (Emphasis added.)), ORS 30.825 ("Any person who is damaged by an act prohibited in ORS 164.886(1) to (3) [tree spiking] *may bring a civil action* to recover damages sustained." (Emphasis added.)). The issue thus reduces to whether the statute impliedly creates statutory liability. The threshold inquiry in that determination, as noted above, is whether the statute imposed a duty on defendant.

A duty is a "legal obligation that is owed or due to another and that needs to be satisfied; that which one is bound to do, and for which somebody else has a corresponding right." *Black's Law Dictionary* 615 (10th ed 2014). When a statute mandates a course of action, a duty is created. *Scovill*, 324 Or at 167. Viewed in those terms, the text of ORS 471.565 does not directly impose a legal obligation not to serve alcohol to visibly intoxicated persons. To complicate things further, ORS 471.410(1), not ORS 471.565, directly imposes a legal obligation on hosts and commercial servers not to serve alcohol to visibly intoxicated persons.[9] In

---

[9] Plaintiff does not argue that ORS 471.565 and ORS 471.410(1) jointly impose such an obligation. Instead, plaintiff asserts that the two statutes operate independently. As noted, this court has held that ORS 471.410(1) does not provide

this unusual set of circumstances, what is clear is that ORS 471.565 *refers* to a duty not to serve visibly intoxicated persons. What is less clear from its text and context is whether the statute itself *imposes* the duty or whether the duty to which it refers has a different source.

We need not resolve that issue in this case, however, because even if a duty not to serve alcohol to visibly intoxicated persons could be inferred from ORS 471.565, nothing in the text or context of the statute indicates that the legislature impliedly intended to create an independent statutory right of action to enforce such a duty. Although plaintiff correctly observes that ORS 471.565 refers to civil liability, a common-law claim against alcohol providers for serving visibly intoxicated persons who then injure third parties in drunk driving accidents already existed when the statute was enacted. *See Campbell*, 279 Or at 243-44 (so noting). In light of *Campbell*, and the additional fact that the statute is phrased in terms of a limitation of a right of action, it is equally reasonable to infer that, when it referred to civil liability, the legislature meant to regulate common-law negligence actions, as it is reasonable to infer that the legislature meant to create an additional statutory right of action.

The fact that the statute does not provide an express remedy for the violation of a duty also is not particularly illuminating where, as here, a private right of action for negligently serving visibly intoxicated persons already existed at common law. A more pertinent question in such circumstances is whether there is any indication that, by enacting *former* ORS 30.950 (1979), the legislature intended

---

an appropriate standard for establishing negligence *per se* liability. *Stachniewicz*, 259 Or at 587. In that case, the court stated:

"The statute in question prevents making available alcohol to a person who is already visibly intoxicated. This makes the standard particularly inappropriate for the awarding of civil damages because of the extreme difficulty, if not impossibility, of determining whether a third party's injuries would have been caused, in any event, by the already inebriated person. Unless we are prepared to say that an alcoholic drink given after visible intoxication is the cause of a third party's injuries as a matter of law, a concept not advanced by anyone, the standard would be one almost impossible of application by a factfinder in most circumstances."

*Id.* at 586-87 (emphasis omitted). We have no occasion in this case to revisit that aspect of the holding in *Stachniewicz*.

to impose an additional or separate standard of liability for serving visibly intoxicated persons than already existed for common-law negligence claims. The answer to that question is "no." The "visibly intoxicated" standard that the legislature enacted in *former* ORS 30.950(1) (1979) was incorporated in this court's statement of the common-law negligence standard of liability for overservice of alcohol in *Campbell*. 279 Or at 243-44. There simply is no indication in the text or context of *former* ORS 30.950 (1979) that the legislature intended to create a statutory right of action with the same elements or different elements from a common-law negligence claim. Indeed, the legislative history of ORS 471.565 confirms that conclusion.

## 2.  *Legislative History*

The substance of ORS 471.565 originally was enacted in 1979 as *former* ORS 30.950 (1979), *renumbered as* ORS 471.565 (2001), and *former* ORS 30.955 (1979), *repealed by* Or Laws 1987, ch 774, § 14 . The bill that resulted in the enactment of those statutes, House Bill (HB) 3152 (1979), was proposed by the Oregon restaurant and beverage industry in response to three decisions by this court—*Wiener v. Gamma Phi, ATO Frat.*, 258 Or 632, 485 P2d 18 (1971), *Campbell*, and *Davis*.

### a.  The Common Law Backdrop

In *Wiener*, the plaintiff was injured in a car accident as she was riding home from an off-site fraternity party, where the vehicle's underage driver had consumed alcohol. The plaintiff brought common-law negligence claims against the fraternity, the owner of the off-site venue, and the fraternity member who had purchased the alcohol that was provided at the party. The trial court dismissed those claims.

On review, this court observed:

"Ordinarily, a host who makes available intoxicating liquors to an adult guest is not liable for injuries to third persons resulting from the guest's intoxication. There might be circumstances in which the host would have a duty to deny his guest further access to alcohol. This would be the case where the host 'has reason to know that he is dealing with

persons whose characteristics make it especially likely that they will do unreasonable things.' Such persons could include those already severely intoxicated, or those whose behavior the host knows to be unusually affected by alcohol. Also included might be young people, if their ages were such that they could be expected, by virtue of their youth alone or in connection with other circumstances, to behave in a dangerous fashion under the influence of alcohol."

*Wiener*, 258 Or 639 (citing *Rappaport v. Nichols*, 31 NJ 188, 156 A2d 1, 9 (1959) (footnotes omitted). With regard to the fraternity member who supplied the alcohol and the owners of the venue, this court acknowledged that, under the circumstances described above, a person could be liable to a third person for allowing another person to become intoxicated. 258 Or at 640. However, the court concluded that the allegations against the fraternity member and the venue owners were insufficient to assert a breach of duty to the plaintiff, because: (1) the fraternity member acted only as a conduit in providing alcohol to the people who served it to others; and (2) the venue owners furnished the premises, but they had no duty to protect the guests or others from the actions of those who were allowed to become intoxicated. *Id.* at 640-42. Turning to the fraternity, this court concluded that its status as host and its direct service of alcohol to the driver were sufficient to create a duty "to refuse to serve alcohol to a guest when it would be unreasonable under the circumstances to permit him to drink." *Id.* at 643. Accordingly, this court reversed the dismissal of the common law negligence claim against the fraternity. *Id*. at 643-44.

Six years later, in *Campbell*, the plaintiff alleged that the defendant tavern owners were liable for injuries that the plaintiff sustained in a car accident caused by a customer to whom the owners had served alcohol while she was "perceptibly" intoxicated. The plaintiff further alleged that the tavern owners knew or should have known that the customer would leave the tavern by driving a car, thereby creating an unreasonable risk of harm to others. *Campbell*, 279 Or at 239. The case was tried to the court, which entered a judgment for the plaintiff. The tavern owners appealed, arguing that the evidence was insufficient to support the court's verdict; the defendants did not contend

that the allegations of the complaint failed to state a claim. *Id*.

On review, this court reiterated its previous statement in *Wiener* that a person who negligently furnishes alcohol to a person who already is severely intoxicated may be held liable for damages to a third person who suffers injuries as a consequence. *Id*. at 239-40 (citing *Wiener*, 258 Or at 639). The court then discussed *Rappaport* again, and ultimately adopted the following reasoning from that case:

> "When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm not only to the minor or the intoxicated person but also to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent."

*Id*. at 240 (citing *Rappaport*, 156 A2d at 8-9). The court in *Campbell* also noted that Oregon statutory law prohibited the service of alcohol to "visibly" intoxicated persons and was similar in that regard to New Jersey law, which prohibited serving alcohol to "apparently" intoxicated persons. *Id*. at 241 n 2 (citing *former* ORS 471.410(3) (1971), *renumbered as* ORS 471.410(1) (1977) ("No person shall give or otherwise make available any alcoholic liquor to a person visibly intoxicated."); *former* ORS 472.310(3) (1977), *repealed by* Or Laws 1995, ch 301, § 74; Oregon Liquor Control Regulations No. 10-065(2)). However, this court adopted the reasoning of *Rappaport* as a matter of common-law negligence, not based on or because of a statute.[10] *Campbell*, 279 Or at 241 n 2.

This court in *Campbell* held that there was sufficient evidence to support an inference that, in serving alcohol to the patron while she was visibly intoxicated, the tavern owners had reason to know that, upon leaving the

---

[10] The court adopted the "visibly intoxicated" standard as a common-law negligence standard, although, in the context of a negligence *per se* claim, this court previously had held in *Stachniewicz* that the visibly-intoxicated standard was "particularly inappropriate for the awarding of civil damages because of the extreme difficulty, if not impossibility, of determining whether a third party's injuries would have been caused, in any event, by the already inebriated person." *Stachniewicz*, 259 Or at 586-87.

tavern, she would drive away in a car. *Id.* at 243. The court reasoned that,

> "[u]nder the rule of *Rappaport*, however, which we now adopt for application in such cases, a tavern keeper is negligent if, at the time of serving drinks to a customer, that customer is 'visibly' intoxicated because at that time it is reasonably foreseeable that when such a customer leaves the tavern he or she will drive an automobile."

*Id.* at 243-44.

This court in *Campbell* therefore concluded, as a matter of first impression, that a tavern owner may be liable in common-law negligence for damages inflicted off-premises on a third party by a patron who had been served while visibly intoxicated. *Id.* at 239, 243-44.[11] The court's statement that a tavern owner who serves a visibly intoxicated patron *is* negligent should not be understood to suggest that the issue of foreseeability has been conclusively established by judicial notice in such circumstances. As this court stated in *Chartrand*:

> "In *Campbell*, when we took judicial notice of the facts discussed above, we did not remove from the definition of negligence the 'knew or should have known' element; nor did we suggest by our language that the 'knew or should have known' element need not be proved at all but may be supplied by judicial notice. The facts that in current times traveling by car to and from a tavern is commonplace and car accidents resulting from drinking are frequent are not the type of indisputable facts that qualify for judicial notice under OEC 201. Judicial notice cannot replace the need for proof of an essential element of the tort claim as alleged in this case, *i.e.*, proof that the defendant knew or should have known that the customer would drive a vehicle from the tavern."

*Chartrand*, 298 Or at 694-95.

The third case leading to the 1979 legislation was *Davis*. In that case, two taverns sold kegs of beer to minors without requiring proof of age. Another minor drank some of the beer and, after becoming intoxicated, drove his car

---

[11] The court expressly noted that it had not reached that issue in *Wiener. Id.* at 238.

negligently, causing an accident that resulted in the death of another person. This court held that the taverns were negligent *per se* in violating ORS 471.130(1) (1975), "which [made] it unlawful to sell [alcohol] to any person 'about whom there is any reasonable doubt of his having reached 21 years of age,' without first requiring [identification or other] proof of age[.]" *Davis*, 284 Or at 355-57.

It was in that setting that the 1979 legislature considered the matter of the liability of social hosts and commercial providers to third parties for overservice of alcohol.

b.   The 1979 legislation

Section 1 of HB 3152, as originally introduced, stated:

> "The Legislative Assembly recognizes the need to restrict the liability of licensees and private hosts for damages incurred or caused by intoxicated patrons or social guests they have served. While there is a clear desire to hold responsible those licensees and private hosts who consciously or recklessly serve visibly intoxicated patrons or social guests, the Legislative Assembly believes that a person must be held responsible and accountable for the person's voluntary actions when such actions are undertaken with a knowledge of possible, although not specifically foreseeable, consequences."

HB 3152 § 1 (1979). Section 2 of the bill provided that a licensee was not liable for damages caused or incurred by intoxicated patrons off the licensee's business premises, unless the licensee served the patron while visibly intoxicated and the service was grossly negligent under the circumstances. HB 3152 § 2 (1979). Similarly, section 3 of the bill provided that "[n]o private host is liable for damages incurred or caused by an intoxicated social guest, unless the private host served or provided alcohol to the guest while visibly intoxicated and the service was grossly negligent under the circumstances." HB 3152 § 3 (1979).

The bill was first considered in the House Judiciary Committee. At its initial hearing, a representative from the Oregon Restaurant and Beverage Association (ORBA) testified that, in ORBA's view, recent court decisions had gone beyond the "intent of the law." Tape Recording, House

Committee on Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (statement of Legislative Chairman John Van Horn, Oregon Restaurant & Beverage Association). According to ORBA, HB 3152 would reduce insurance costs, which had significantly increased as a result of those decisions. *Id.* Van Horn told committee members that ORBA wanted all parties to be held responsible for their actions, including patrons and licensees. *See id.* ("[I]f a licensee is negligent in serving a visibly intoxicated person, he or she should suffer the consequences of violating the law, including payment of a fine, suspension, or revocation of the license."). However, ORBA disagreed with "the theory expressed by the supreme court—that a violation of the statute prohibiting the sale of liquor to minors or visibly intoxicated persons should constitute negligence *per se*—is sound public policy, as [that] act is not always necessarily the proximate cause of the plaintiff's injuries." *Id.*

According to Van Horn, ORBA's members were willing to bear part of the burden of risks of injuries to third parties, but they wanted that burden limited to circumstances where a licensee was grossly negligent. *Id.* In ORBA's view, "[i]n the *Campbell* case, the court shifted the burden of evidence from the plaintiff to the defendant, so that in order to escape liability, the defendant must show that he had some specific knowledge that the particular individual in question was not going to be driving from the establishment." *Id.* In ORBA's estimation, a negligence standard reflected better public policy, because responsibility would be shared by licensees and social hosts, on the one hand, and patrons and guests who consume the alcohol, on the other, rather than placing the entire burden on the alcohol server, as, in ORBA's view, the recent case law suggested. *Id.*

At the same committee hearing, a representative from the restaurant industry, Dave Dietz, also testified. Dietz said that recent case law had led to problems for licensees in acquiring insurance; he noted that, in *Wiener*, the court concluded that there was no statutory presumption that a licensee would be liable, whereas in *Campbell*, common-law negligence liability was upheld based on the same types of laws as *Wiener*, and then extended to negligence *per se* in *Davis*. Tape Recording, House Committee on

Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (statement of Dave Dietz). HB 3152 was the industry's attempt to address its concerns about how far that liability ought to extend. *Id.*

Dietz agreed with Van Horn that the burden of the risk of injuries needed to be better balanced between providers and consumers of alcohol. Dietz stated that

"[s]ections 2 and 3 address directly the requirement of the proof of liability for the licensee and social hosts. In both cases, we are asking that a licensee or social host be held liable only in the case where they have served alcoholic beverages to a visibly intoxicated person and that server was grossly negligent under the circumstances then existing at the time of the service."

*Id.* Dietz noted that the visibly intoxicated standard reflected current law and, although potentially difficult to apply, it was a standard that servers understand. *Id.* Dietz stated that, if a server provides alcohol to a visibly intoxicated patron, the owner of the establishment "should be liable, and they should understand when and where that liability begins to exist." *Id.*

At the same hearing, Representative Frohnmayer took issue with the proponents' position that recent case law had shifted the burden of risk of injury away from intoxicated patrons and guests. Tape Recording, House Committee on Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (comments of Rep Dave Frohnmayer). He described the effect of recent court decisions as adding an additional category of potential plaintiffs, not limiting the liability of the intoxicated driver in any way. *Id.* In addition, Representative Frohnmayer expressed concern about the bill's proposed gross negligence standard, which he described as impossible to administer. *Id.* The following exchange is informative:

FROHNMAYER: "[I]sn't it true that this bill doesn't merely restore the status quo prior to the supreme court's recent decision, but in fact rolls back the law as it has been understood for a decade or so to a point where third party liability is very difficult to obtain at all?

DIETZ: "There's an argument that could be made that it rolls it back much before the '78 decision in *Campbell*.

And, of course, that's exactly what we're attempting to do. I think it takes it back very nearly to the 1971 decisions, in both *Wiener* and *Stachniewicz*, both of which spoke more to the issue of what the common law had at that point in time determined. We think this is something that should be determined statutorily. And therefore we need a statutory standard that addresses this issue specifically. We never have had a statute in this state that precisely and definitely addresses this very point. And because of that, the courts have had to do a great deal of shifting and changing to try to arrive at the responsibilities of the parties involved. I don't think it rolls it back so much as it finally establishes a standard that will be consistently applied.

FROHNMAYER:   "Well, let me see if I can spell out, what I'm thinking. The supreme court decided a case on the basis of a statute that some people feel shouldn't have established a statutory standard but was taken to be. Therefore, the legal effect of it is, once you've violated the statute, then that's negligence *per se*. That's the first clear holding of the supreme court on that and that was, in the minds of many, including my own, an extension of the law beyond that that I think the legislature intended. Now, and again, speaking for myself, if you came and just said to us, 'we don't believe that violation of statute in this context ought to be negligence per se,' I think I could buy it. To go back from that and say that not only is it not negligence *per se*, but that instead you now have to establish gross negligence, even after you meet the requirement that shows that the guest is visibly intoxicated, then I think that maybe rolls it back into the '50s or the '40s, not just the 1970s.

DIETZ:   "Well, don't forget, when the court held precisely that the violation was negligence *per se*, the court was not looking at 471.410. It looked at 471.130 which held that the negligence *per se* occurred when you served a minor. Now, that we think was an unintended interpretation, at least in terms of why the legislature passed that particular statute. And the courts had held in 1971 that 410, 471.410 were intended as protection statutes—protection of minor statutes. For the court then in 1978 to turn around and say to our licensees that service to a minor was negligence *per se* for the actions that that minor later engaged in, and which ultimately led to the injury of a third party or a third party's property, we think entirely unintended by the enactment of 471.130 and a gross extension of the statute beyond

> any reason. And, yes, we want to roll it back to make very clear exactly what legislative intent is. Maybe it's not precisely this language, but we hope it will be something that once and for all establishes a standard that the court can use in deciding the cases that are brought to it."

Tape Recording, House Committee on Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (statements of Dave Dietz and Rep Dave Frohnmayer). It is apparent from the foregoing exchange that both Representative Frohnmayer and Dietz were primarily concerned about the reach of *Davis*, where this court had held that a violation of *former* ORS 471.130(1) constituted negligence *per se*.

At a later work session on HB 3152, Dietz proposed amendments to remove the gross negligence standards for both licensees and social hosts in response to the committee's concerns. Tape Recording, House Committee on Judiciary, HB 3152, June 26, 1979, Tape 96, Side 1 (statement of Dave Dietz). "In other words, we would go back to what is essentially the pre-[*Davis*] standard of common law negligence for finding third party liability that was expressed in the *Wiener* case in 1971." *Id*. Dietz stated that the amendments to delete the gross negligence standard were "to get back towards the common law negligence test, not necessarily that we want to go all the way back to a point where licensees could be unfairly or inequitably held liable for service to patrons." *Id*. The amendments to remove the gross negligence standard from HB 3152 were then adopted. *Id*.

Representative Rutherford then expressed concern about the preamble of the bill, section 1, which, as noted, provided, in part: "While there is a clear desire to hold responsible those licensees and private hosts who consciously or recklessly serve visibly intoxicated patrons or social guests, the Legislative Assembly believes that a person must be held responsible and accountable for the person's voluntary actions when such actions are undertaken with a knowledge of possible, although not specifically foreseeable, consequences." Representative Rutherford opined that section 1 was redundant and could muddy the water. Tape Recording, House Committee on Judiciary, HB 3152, June 26, 1979, Tape 96, Side 1 (comment of Rep Rutherford).

He was concerned that "if we write the statute to say what we intend it to say, we don't need someplace else saying, 'what we really mean is this.' And it has a number of words that can appear to add another layer of meaning to the words in the document." *Id.* A discussion ensued regarding inconsistencies in section 1 of the bill after the gross negligence standard had been removed and a "common-law negligence standard" was retained, and the committee subsequently deleted section 1. *Id.*

Afterwards, Representative Frohnmayer stated that perhaps a more informal expression, such as a statement of legislative history, could replace the editorial statement in section 1. Tape Recording, House Committee on Judiciary, HB 3152, June 26, 1979, Tape 96, Side 1 (comments of Rep Dave Frohnmayer). He then said,

> "I think it is clear that it's the agreement of the committee, if the bill passes, that the liability situation with respect to persons who innocently serve liquor in their home or in some instances has gotten out of hand creating serious problems with respect to the availability of insurance and so forth and that the committee is doing its best to address that question by retreating at least somewhat from the implications of certain court decisions which have been the subject of the committee's discussions. That is my understanding of what the bill is doing."

*Id.*[12]

As pertinent here, the discussion next centered on section 5, concerning minors. Section 5, as initially proposed, would have amended ORS 417.130(1) to provide that a licensee shall not be liable for failure to require proof of age for persons about whom there is reasonable doubt as to whether they had reach the age of 21. HB 3152 § 5 (1979).

---

[12] Nobody present disputed Representative Frohnmayer's statement. At the same time, it is apparent that other legislators, if left to their own devices, would have preferred either more relaxed or more rigid standards for over-service liability claims. For example, Representative Rutherford commented, "Since we are talking about legislative [intent], it seems to me that people who serve liquor to other people should be responsible for their negligence, if any, and that term is commonly understood[.]" *Id.* On the other side, Representative Bugas stated that he did not like third party liability and would vote for all the restrictions that could be placed on it. *Id.*

Framing the issue, Representative Lombard contrasted this court's decisions in *Wiener* and *Davis*:

> "[I]n 1971, in the case of *Wiener v. Gamma Phi ATO Fraternity* at the University of Oregon, we had a situation in which the suit was based simply on common law negligence and foreseeability of that against an individual that had sold liquor to, not an intoxicated minor, but an un-intoxicated minor, and the liquor was thereafter conveyed to a party. \* \* \* And the court in that kind of situation looked at the foreseeability on the part of the defendants selling the alcohol, as to whether or not that the alcohol being purchased would be distributed unwisely and so on and so forth. Now what those who support the [*Davis*] case, I think, want to say as a matter of public policy that it shall be presumed that sale of any alcoholic liquor to a minor will be consumed unwisely."

Tape Recording, House Committee on Judiciary, HB 3152, June 26, 1979, Tape 96, Side 1 (statement of Rep Lombard). According to Representative Lombard, section 5 stated the legislature's true intent with regard to ORS 471.130(1). *Id.* Representative Rutherford then moved to delete section 5 in order to retain existing case law with respect to minors, that is, the holding in *Davis*. *Id.*

Representative Frohnmayer then suggested that a middle ground between *Wiener* and *Davis* could be found; he was content with *Wiener* but thought that *Davis* went too far. *Id.* At an ensuing work session, the committee approved an amendment stating that no alcohol provider shall be liable for damages caused by persons under the age of 21, "unless it is demonstrated that a reasonable person would have determined that [proof of age] should have been requested or that the identification [provided] was altered" or otherwise false. HB 3152 (1979), Amendments, A-Engrossed bill (June 29, 1979). With that amendment, the committee approved HB 3152, and sent it to the House floor, where it subsequently passed without further amendment.

Before the Senate Committee on State and Federal Affairs and Rules, Dietz again testified that HB 3152 was meant to retreat from recent court decisions which the restaurant and beverage industry believed had gone too far in interpreting then-existing statutes on the issue of third

party liability. Tape Recording, Senate Committee on State and Federal Affairs and Rules, HB 3152, June 30, 1979, Tape 9, Side 1 (statement of Dave Dietz). Dietz stated,

"We believe [HB] 3152 is a reasonable response to the court's recent efforts. We believe it would bring good balance, both for protecting the rights of people that are injured, as well as protecting the ability of a licensee or permittee to conduct business in a responsible manner. *** Matter of fact, we regard this bill as a measure that increase the responsibility of our permitiees and our licensees. The bill, very simply, protects both licensees, permittees, and social hosts in sections one and two of the measure, and indicates that a licensee, permittee, or social host would only be liable for damages incurred or caused by an intoxicated patron or guest in the event that beverages were provided to a visibly intoxicated patron or guest."

Without significant discussion, HB 3152 then passed through committee and the Senate floor, and was enacted as Oregon Laws 1979, chapter 801, sections 1 to 6.

To summarize, as enacted, the pertinent statutes provided:

*Former* ORS 30.950 (1979)**.** "No licensee or permittee is liable for damages incurred or caused by intoxicated patrons off the licensee's or permittee's business premises unless the licensee or permittee has served or provided the patron alcoholic beverages when such patron was visibly intoxicated."

*Former* ORS 30.955 (1979)**.** "No private host is liable for damages incurred or caused by an intoxicated social guest unless the private host has served or provided alcoholic beverages to a social guest when such guest was visibly intoxicated."

*Former* ORS 30.960 (1979), *renumbered as* ORS 471.567 (2001). "Notwithstanding ORS 30.950, 30.955 and 471.130, no licensee, permittee or social host shall be liable to third persons injured by or through persons not having reached 21 years of age who obtained alcoholic beverages from the licensee, permittee or social host unless it is demonstrated that a reasonable person would have determined that identification should have been requested or that the identification exhibited was altered or did not accurately describe the person to whom the alcoholic liquor was sold or served."

    c.   Case law concerning the 1979 legislation

This court has reviewed the legislative history of the 1979 legislation on several previous occasions in an effort to determine the legislative intent with respect to its various provisions. In *Sager v. McClenden*, 296 Or 33, 672 P2d 697 (1983), the question was whether *former* ORS 30.950 (1979) created a claim for the estate of an intoxicated patron against a tavern for fatal injuries that the decedent had sustained in a fall after being served alcohol while he was visibly intoxicated. *Id.* at 35. After reviewing the committee hearing minutes concerning HB 3152, this court determined that the purpose of *former* ORS 30.950 (1979) was to limit the liability of taverns and other commercial alcohol providers to third parties. *Id.* at 37. The court stated that section 1 of HB 3152 initially "was proposed to limit the holding in *Campbell*"; the court described *Campbell* as holding that "a tavern keeper is liable to third parties who are injured in an automobile accident that results from serving a visibly intoxicated customer because it is reasonably foreseeable that when the customer leaves the premises, he or she will drive an automobile." *Sager*, 296 Or at 38. According to the court, once the gross negligence standard was removed from HB 3152, section 1 of the bill, as finally approved, "codified the holding in *Campbell*." *Id.* at 38-39.

The court further stated that a "thorough reading of the minutes of the committee hearings on HB 3152 fail[ed] to reveal a single mention of creating a [new] claim in favor of injured patrons[,]" and, in fact, the discussion throughout the hearings centered on limiting a licensee's liability to third parties. *Id.* at 39. Moreover, because the text of *former* ORS 30.950 (1979) was written in a way that logically limited liability rather than expanding it, the court held that *former* ORS 30.950 (1979) did not create a claim in favor of injured patrons against a tavern who served them when visibly intoxicated. *Id.* at 39-40 (citation omitted) ("[*Former*] ORS 30.950 only provides the condition under which a commercial alcoholic beverage server becomes liable to one who already has a claim. In light of the legislative history, we [] read [*former*] ORS 30.950 as imposing a limitation on the liability originally created by judicial decision."). The court in *Sager* also stated that section 3 of HB 3152, the

section concerning service to minors, "was proposed to limit the holding in *Davis*" and, as finally approved, it restricted third party liability for licensees and social hosts who serve alcohol to minors "by replacing the negligence *per se* rule of *Davis* with a reasonable person standard." *Id*. at 39.

Two years later, this court again examined *former* ORS 30.950 (1979) in *Chartrand*, a common-law negligence action against a tavern for serving alcohol to a visibly intoxicated patron who injured the plaintiff in a head-on vehicle collision. *Chartrand*, 298 Or at 691. In that case, the jury returned a verdict for the plaintiff, and the tavern appealed. *Id*. This court reversed the judgment for the plaintiff based on instructional error. *Id*. at 695.

In *dictum*, the court went on to say that, on remand, the plaintiff could proceed under one or more of three theories: (1) common-law negligence, as recognized in *Campbell*; (2) negligence *per se* for violation of ORS Chapter 471, as recognized in *Davis*; and (3) statutory liability under *former* ORS 30.950 (1979), as recognized in *Nearing*. *Chartrand*, 298 Or at 695. Elaborating on the statutory liability theory, the court said,

> "The legislature by stating, or implying in reverse language, that a tavern owner will be held liable for the acts of a person who has been served alcoholic liquor while visibly intoxicated, resolved the foreseeability issue as a matter of law. Thus, a plaintiff protected by such a statute need not resort to any concepts of negligence. Negligence is irrelevant. The sole question is whether the defendant engaged in acts prohibited by the statute and whether the violation of the statute resulted in injury."

*Id*. at 696.

The court then discussed the historical process that had resulted in the enactment of *former* ORS 30.950 (1979). In contrast to this court's description of the legislative history in *Sager*, the court in *Chartrand* described the legislation as expanding the liability of commercial alcohol providers beyond the limits established by *Campbell* and *Davis*. *Chartrand*, 298 Or at 696. Quoting an analysis of the legislative history from a student law review comment, the court stated that, after HB 3152 was amended to remove the

gross negligence standard, the purpose of the bill changed from limiting liability to third parties to expanding it. *Id.* at 696-97 (quoting Comment, *Review of Oregon Legislation*, 16 Willamette L Rev 191, 192-93 (1979) ("After numerous amendments by the House Judiciary Committee, the bill lost its liability reducing impact, yet retained the support of commercial host lobbyists.").[13] The court then stated that the final version of the bill resulted in two sections— *former* ORS 30.950 (1979) and *former* ORS 30.955 (1979)— that created liability for commercial and social hosts for injuries caused by intoxicated persons that are served while visibly intoxicated, "with no reference to proof of any form of negligence." *Id.* at 697.

After *Chartrand*, this court considered *former* ORS 30.950 (1979) or *former* ORS 30.955 (1979) on four more occasions. In *Gattman*, the question was whether *former* ORS 30.950 (1979) provided a remedy to a third party against a tavern that served alcohol to a visibly intoxicated patron who later stabbed the plaintiff off-premises. To answer that question, this court reviewed the decisions that led

---

[13] In support of that conclusion, the comment cited statements made by Representative Rutherford at a work session on June 28, 1979. Elizabeth Lee Fancher, *Commercial and Social Host Liability for Dispensing Alcoholic Beverages*, 16 Willamette L Rev 191, 192 n 10 (1979) (citing Tape Recording, House Committee on Judiciary, HB 3152, June 28, 1979, Tape 98, Side 1 (statement of Rep Rutherford)). We find no support for that conclusion in the comments of any legislator, including Representative Rutherford, at the June 28 work session. As noted, the subject of that work session was an amendment to *limit* the holding of *Davis* by prohibiting recovery against an alcohol provider for damages caused by a minor in the absence of proof that a reasonable person would have requested proof of age or would have determined that the identification provided was false. House Committee on Judiciary, HB 3152, June 28, 1979, Tape 98, Side 1.

Representative Rutherford's position is best captured in the following statement that he made at the June 26 hearing:

"Since we are talking about legislative [intent], it seems to me that people who serve liquor certainly should be responsible for their negligence, if any, as that term is commonly understood."

Tape Recording, House Committee on Judiciary, HB 3152, June 26, 1979, Tape 98, Side 1.

The actual substantive basis for the law review comment's conclusion may have been the author's belief that, in adopting "the rule of law formulated *** in *Campbell*[,]" the legislature provided a statutory standard of care in HB 3152 that would support a negligence *per se* claim. *See* Fancher, 16 Willamette L Rev at 198-99. Whatever may be the merit of that proposition, it does not support this court's *dictum* in *Chartrand* that *former* ORS 30.950 (1979) created a statutory liability claim against persons who serve visibly intoxicated patrons or guests.

to the enactment of the 1979 legislation, and then extensively quoted this court's review in *Sager* of the history of that legislation. *Gattman*, 306 Or at 16-22. The court stated that "[m]embers of the 1979 legislature would be surprised to hear that in attempting to limit the liability of servers of alcoholic beverages to the standard stated in *Campbell*, they instead created licensee and permittee liability for *all* actions of an intoxicated customer" after service to a visibly intoxicated person. *Id.* at 22 (emphasis added). Noting that it would be unusual to create statutory liability by providing that "no person is liable unless," *id.* at 23 n 11, the court reiterated that the legislative history set out in *Sager* established that *former* ORS 30.950 (1979) may have been proposed as a limitation on server liability, but it became "a legislative codification of this court's decision in *Campbell* \*\*\*." *Gattman*, 306 Or at 23.

The court in *Gattman* acknowledged that *Chartrand* provided "some support" for the assertion that the statute did provide a statutory liability claim for the plaintiff's situation in *Gattman*. *Gattman*, 306 Or at 23. However, the court distinguished *Chartrand* as involving the exact situation that the legislature was concerned with—drunk driving—and declined to hold that *former* ORS 30.950 (1979) created statutory liability in an assault case. *Id.* at 23-24. The court also noted that the statement in *Chartrand* that the plaintiff there could proceed on a statutory liability theory was *dictum*, *id.* at 23, and that that *dictum* had been the subject of academic criticism. *Id.* at 24 n 12 (citing Caroline Forell, *The Interrelationships of Statutes and Tort Actions*, 66 Or L Rev 219, 266-67 (1987) (noting that *Chartrand* court did not consider wisdom of creating additional statutory action where common law claim existed or whether legislature intended statutory action to preempt common law claim)).

Later the same year, this court considered whether, under *former* ORS 30.955 (1979), a tavern could maintain a third party claim based on statutory liability against a private host who bought his visibly intoxicated friend drinks at the tavern before the friend drove negligently and injured the plaintiff in an automobile accident. *Solberg v. Johnson*, 306 Or 484, 487-88, 760 P2d 867 (1988). Noting that *former* ORS 30.955 (1979) also originated in HB 3152, the court

reasoned that, if *former* ORS 30.950 (1979) "was designed to hold liable for damages licensees who serve liquor to visibly intoxicated patrons[,]" then *former* ORS 30.955 (1979) was designed to hold private hosts liable for serving alcohol to visibly intoxicated guests. *Solberg*, 306 Or at 489. The court concluded that the statute was "specifically adopted to provide a remedy" against private hosts. *Id.*

We note that the third-party plaintiff tavern in *Solberg* pleaded a single claim in which it alleged that the host was "negligent" in serving alcoholic beverage[s] to someone who was visibly intoxicated in violation of [*former*] ORS 30.955. In *Solberg*, the court did not cite *Chartrand*, nor did it indicate whether foreseeability was material to a statutory liability claim under *former* ORS 30.955 (1979). In short, neither the court nor the parties addressed whether, and if so, how, the elements of a statutory liability claim differed from those of a negligence claim.

In a case involving an off-premises assault similar to *Gattman*, the plaintiff asserted claims based on common-law negligence, negligence *per se* under ORS 471.410(1), and statutory liability under *former* ORS 30.950 (1979). *Hawkins v. Conklin*, 307 Or 262, 264-65, 768 P2d 66 (1988). In *Hawkins*, this court affirmed its holding in *Gattman* that *former* ORS 30.950 (1979) does not provide a statutory remedy in favor of plaintiffs injured in an assault.[14] *Id.* at 265. The court then discussed the "operation of [*former*] ORS 30.950 in common law negligence actions[.]" *Id.* at 266.

As background for its discussion of how the statute affected common-law claims, the court in *Hawkins* again reviewed the legislative history of *former* ORS 30.950 (1979). *Id.* at 267-68. Citing *Sager*, the court stated that, despite the restaurant and beverage industry's desire to "roll back" the law to its status before *Campbell*, "the statute as enacted codified the holding of *Campbell*." *Id.* The court also concluded that "the legislative history did [not] indicate an intent to distinguish between the types of risks associated with intoxication." *Id.* at 268 n 6. Noting that the "purpose

---

[14] The court also reaffirmed its decision in *Stachniewicz* that *former* ORS 471.410(3) (1971), *renumbered as* ORS 471.410(1) (1977) is not an appropriate standard for establishing negligence *per se*. *Hawkins*, 307 Or at 265.

of [*former*] ORS 30.950 was to protect commercial alcohol servers, not to protect a particular class of plaintiffs, such as those who were injured by intoxicated drivers[,]" the court stated that the statute did not limit common law recovery to injuries caused by intoxicated drivers. *Id.* Because *former* ORS 30.950 (1979) provided that "[n]o licensee or permittee is liable *** unless," the court held that "in common law negligence actions governed by [*former*] ORS 30.950, serving alcohol to someone who is visibly intoxicated is the only conduct for which tavern owners may be held liable for off-premises injuries." Therefore, the court held, "to state a common law negligence claim that is not barred by [*former*] ORS 30.950, the plaintiff must allege that the licensee or permittee served alcohol to the person who injured the plaintiff when that person was visibly intoxicated." *Id.* Thus, the court in *Hawkins* essentially treated *former* ORS 30.950 (1979) as imposing a statutory limit on common-law negligence claims.

Finally, in *Grady v. Cedar Side Inn, Inc.*, 330 Or 42, 997 P2d 197 (2000), the plaintiff was a passenger in a car that struck a power pole and overturned. The plaintiff and the driver were both intoxicated, having spent the day consuming alcoholic beverages, some purchased at an inn and some at a convenience store. The plaintiff sued the inn and convenience store for common-law negligence and statutory liability under *former* ORS 30.950 (1987),[15] alleging that both defendants had served the driver while he was visibly intoxicated. *Id.* at 45. The issue before this court was whether the plaintiff could recover even though he had participated in the driver's intoxication by purchasing some of the alcohol for him. *Id.* at 44. This court rejected the defendants' argument that the plaintiff's complicity in the driver's intoxication precluded his recovery on the ground that such a defense would be inconsistent with the legislature's decision to abolish contributory negligence as a defense. *Id.* at 47. The court also concluded that the plaintiff was not barred as a matter of law from recovery under his statutory claim because nothing in the text or context of *former* ORS

_____

[15] As elaborated below, *Grady* involved a later version of *former* ORS 30.950 (1987) that did not vary, insofar as pertinent here, from the original version of the statute.

30.950 (1987) limited liability under the statute to "inno-cent" third parties. *Id.* at 48-49. Nor was the plaintiff barred from recovery as a matter of law because he was a "social host" who had purchased alcohol for the driver. *Id.* at 49. The court ultimately stated that the plaintiff's possible sta-tus as a "social host" may have affected the apportionment of relative fault, but that status did not bar the plaintiff from recovery under the statute. *Id.* ("[*Former*] ORS 30.950 subjects licensees, permittees, and social hosts to liability to third parties for injuries caused by the intoxicated patron or guest whom they served. * * * That is exactly the type of claim that the statute permits.").

### d.   The intent of the 1979 legislation revisited

From our review of the legislative history of *former* ORS 30.950 (1979) and *former* ORS 30.955 (1979), as well as this court's prior decisions examining that legislative his-tory, it does not appear that this court has previously con-sidered the recordings of the 1979 legislative hearings on HB 3152 that we have discussed here. Instead, this court's previous consideration of the legislative history appears to have been confined to committee minutes. *See Sager*, 296 Or at 37 n 2 ("legislative history" consisted of minutes from committee hearings); *id.* at 39 ("A thorough *reading of the minutes* of the committee hearings on HB 3152 fails to reveal a single mention of creating a claim in favor of injured patrons." (Emphasis added.)). However, our review of the recordings indicates that the conclusions that this court drew from the legislative history before it in *Sager*, 296 Or at 38-39, *Gattman*, 306 Or at 23, and *Hawkins*, 307 Or at 267-68, were essentially accurate: In enacting *former* ORS 30.950 (1979) and *former* 30.955 (1979), the legislature ultimately approved the holding in *Campbell* and intended to limit the holding in *Davis*. At no time during hearings on HB 3152 did anyone suggest that its enactment would cre-ate statutory liability that was different from common law liability. On the contrary, the focus throughout the hearings was on whether the perceived reach of the *Campbell* and *Davis* decisions should be statutorily confined.[16]

---

[16] *See* Tape Recording, House Committee on Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (statement of Legislative Chairman John Van Horn, Oregon

The legislative history of HB 3152, as amplified by the full record of hearings on that bill, shows that its ultimate purpose was to limit the liability of alcohol providers in serving visibly intoxicated patrons. Comments made at the committee hearings on the bill repeatedly stated preferences for a common-law negligence standard and for rejecting a gross negligence standard.[17] It is true that the proponents of HB 3152 and perhaps some legislators may have understood this court's decision in *Campbell* as having prescribed a negligence *per se* standard for alcohol providers who serve visibly intoxicated persons.[18] However, those statements do not

---

Restaurant & Beverage Association) (supporting concept of limited liability in HB 3152 because recent court decisions had gone beyond law's intent); *id.* (statement of Dave Dietz) (stating that recent case law led to problems for licensees in acquiring insurance and HB 3152 attempted to address concerns about extent of liability); *id.* (statement of Rep Dave Frohnmayer) (stating that recent court decision based on statute resulted in negligence *per se*, which went too far in many opinions, including his own); Tape Recording, House Committee on Judiciary, HB 3152, June 26, 1979, Tape 96, Side 1 (comments of Rep Dave Frohnmayer) (summarizing legislative intent by stating that liability situation had gotten out of hand and committee was addressing problem by retreating from recent court decisions; expressing desire for middle ground between *Wiener* and *Davis* because *Davis* had gone too far); *id.* (comment of Rep Rutherford) (stating that section 1 of HB 3152—expressing legislature's acknowledgement of need to restrict liability of licensees and hosts—was redundant); *id.* (comment of Rep Bugas) (expressing displeasure with third party liability and desire to place restrictions on it); Tape Recording, Senate Committee on State and Federal Affairs and Rules, HB 3152, June 30, 1979, Tape 9, Side 1 (statement of Dave Dietz) (stating that HB 3152 was designed to back away from recent court decisions).

[17] Tape Recording, House Committee on Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (statements of Van Horn and Dietz); *id.* (statement of Rep Frohnmayer) (Negligence *per se* "was, in the minds of many, including my own, an extension of the law beyond that that I think the legislature intended."); Tape Recording, House Committee on Judiciary, HB 3152, June 26, 1979, Tape 96, Side 1 (statement of Rep Lombard) ("[T]he standard *** in the bill is basically negligence."); *id.* (statement of Rep Rutherford) ("[W]e've adopted a negligence standard[.]").

[18] For example, Van Horn described *Campbell* as shifting the burden of producing evidence from the plaintiff to a defendant-licensee by requiring the licensee to show some specific knowledge that the intoxicated patron was not going to drive from the tavern. Tape Recording, House Committee on Judiciary, HB 3152, June 11, 1979, Tape 85, Side 2 (statement of Legislative Chairman John Van Horn, Oregon Restaurant & Beverage Association). Van Horn further described *Campbell* as reflecting this court's theory "that a violation of the statute prohibiting the sale of liquor to *** visibly intoxicated persons should constitute negligence *per se* ***." *Id.* Similarly, Dietz described the industry's concern with the shift from *Wiener*—where no statutory presumption of liability existed—to *Campbell*—where common law negligence was based on statutes and OLCC regulations—to *Davis*—where common law negligence was extended to negligence *per se*. *Id.* (statement of Dave Dietz).

reflect a proper understanding of the holding of *Campbell*. As noted, to prevail in a common-law negligence claim based on overservice under *Campbell*, a plaintiff still had to plead and prove that the defendant knew or should have known that a visibly intoxicated patron would create an unforeseeable and unreasonable risk of harm to others off the defendant's premises. *See Chartrand*, 298 Or at 694-95 ("Judicial notice cannot replace the need for proof of an essential element of the tort claim as alleged in this case, *i.e.*, proof that the defendant knew or should have known that the customer would drive a vehicle from the tavern.").

In *former* ORS 30.950 (1979) and *former* ORS 30.955 (1979), the legislature effectively said that liability may go as far as *Campbell* but no farther. The result was legislation that limited liability for alcohol providers by describing the only circumstances under which they could be liable in a common-law negligence claim—*i.e.*, for serving alcohol to a visibly intoxicated person. Consistently with that purpose, the legislation as enacted did not state that an alcohol provider *is liable* for serving visibly intoxicated persons, which could indicate that one or more aspects of foreseeability would not need to be shown; instead, the legislation provided that *no alcohol server is liable unless*, which indicates a limitation on liability. Because, as the record shows, legislative committee members expressed skepticism toward even a negligence *per se* standard, it seems highly unlikely that they would have consciously approved legislation creating statutory liability that would hold an alcohol provider liable for overservice without regard to foreseeability.

Unfortunately, this court stated in *dictum* in *Chartrand* that, after the gross negligence standard was removed from HB 3152, the bill's effect was not to limit alcohol provider liability but, rather, to expand it. *Chartrand*, 298 Or at 697. As discussed, there is no indication in the legislative record that the rejection of the proposed gross negligence standard signaled such a change in the bill's purpose. That standard was meant to "roll back the law" from ORBA's understanding of *Campbell* as setting a negligence *per se* standard and to retreat to what ORBA understood to be an earlier state of the law. *See* Tape Recording, House Committee on Judiciary, HB 3152, June 11, 1979,

Tape 85, Side 2 (comments of Rep Dave Frohnmayer). It is illogical to infer that the legislature's rejection of the gross negligence standard was more than a partial retreat from the proponents' goals. After the gross negligence standard was removed, committee members continued to state that the bill was intended to limit liability for alcohol providers who serve visibly intoxicated persons.[19] Moreover, when the amended bill was presented to the Senate committee, industry representative Dietz still described the intent of HB 3152 as backing away from recent court decisions and protecting alcohol providers. Tape Recording, Senate Committee on State and Federal Affairs and Rules, HB 3152, June 30, 1979, Tape 9, Side 1 (statement of Dave Dietz).

In short, the 1979 legislature ultimately enacted compromise legislation that rejected both a gross negligence standard and a negligence *per se* standard for alcohol providers and, as a middle ground, endorsed this court's common-law negligence standard in *Campbell*. Because that standard requires a plaintiff to show that the defendant knew or should have known that its conduct created an unreasonable and unforeseeable risk of harm to the plaintiff and limits liability to reasonably foreseeable harm, there is no basis to conclude that, by enacting HB 3152, the legislature intended to create a form of statutory liability that eliminated those foreseeability requirements. In fact, to so conclude would directly contradict the legislative history that this court has reviewed in its decisions since 1979.

Which brings us to back to *Chartrand*. In light of the foregoing analysis, we must disavow the dictum in *Chartrand* stating that, by enacting *former* ORS 30.950 (1979), the legislature intended to create statutory liability for alcohol providers that effectively dispensed with a foreseeability requirement. *See, e.g.*, *ODOT v. Alderwoods (Oregon), Inc.*, 358 Or 501, 520 n 8, __ P3d __ (2015) (disavowing

---

[19] *See id.* (comments of Rep Dave Frohnmayer) (summarizing legislative intent by stating that liability situation had gotten out of hand and committee was addressing problem by retreating from recent court decisions); (comment of Rep Rutherford) (stating that section 1 of HB 3152—expressing legislature's acknowledgement of need to restrict liability of licensees and hosts—was redundant); (comment of Rep Bugas) (expressing displeasure with third party liability and desire to place restrictions on it).

dictum that was "not supported by any authority"); *State v. Christian*, 354 Or 22, 40, 307 P3d 429 (2013) (overruling prior decisions that extended, without explanation, overbreadth analysis beyond free-speech cases). As noted, the student comment on which the court relied to state that the legislation ultimately expanded liability for alcohol providers did not support the court's *dictum*. In addition, the court's reliance on *Sager* for that proposition was misplaced. As discussed, this court in *Sager* held that the purpose of HB 3152 was to approve the common-law negligence standard set out in *Campbell*, which, as this court stated in *Chartrand*, retained a foreseeability requirement.[20]

### e.  Later statutory amendments

Although we have determined that ORS 30.950 (1979) was not intended to create a statutory right of action that exists independently of a common law negligence claim for licensees or hosts who serve alcohol to visibly intoxicated patrons or guests, our review would be incomplete without considering whether any subsequent amendments to that statute created such liability.

In 1987, the legislature combined *former* ORS 30.950 (1979) and *former* ORS 30.955 (1979) into one statue, which continued as *former* ORS 30.950 (1987), *renumbered as* ORS 471.565 (2001).[21] Or Laws 1987, ch 774, § 13. That legislation also added a requirement that plaintiffs prove

---

[20] Unlike the *dictum* in *Chartrand*, this court's statements in *Solberg* and *Grady* that the plaintiffs there could maintain claims for statutory liability based on *former* ORS 30.950 (1979) were actual holdings of those cases. However, in neither of those cases did the court actually decide that any such claim has different elements than a common law negligence claim. Accordingly, we need not reconsider those cases here except to disavow any suggestion in them that, in enacting HB 3152 (1979), the legislature intended to create an independent statutory right of action with different elements from a common-law negligence claim.

We further conclude that we need not reconsider this court's decision in *Gattman*. As discussed, although the court in *Gattman* did acknowledge the *dictum* in *Chartrand*, it also warily treated it as such and ultimately distinguished *Chartrand* in concluding that the plaintiff was not entitled to recover on a statutory liability theory. *Gattman*, 306 Or at 23-24.

[21] *Former* ORS 30.950 (1987) provided:

"No licensee, permittee or social host is liable for damages incurred or caused by intoxicated patrons or guests off the licensee, permittee or social host's premises unless:

visible intoxication by "clear and convincing evidence." *Id*. In 1997, a pre-action notice requirement was added for any action against a social host or commercial alcohol provider for alcohol-related injury or damage. Or Laws 1997, ch 841, § 1. Then, in 2001, the statute was amended to read as it does now, and it was renumbered as ORS 471.565. Or Laws 2001, ch 534, § 1.

The 2001 amendments were enacted in response to two decisions by this court, *Grady*, which we already have discussed, and *Fulmer v. Timber Inn Restaurant and Lounge, Inc.*, 330 Or 413, 9 P3d 710 (2000). In *Fulmer*, the plaintiffs sought recovery from a restaurant that served one of the plaintiffs while he was visibly intoxicated, after which he had injured himself in a fall on the restaurant's premises. *Id*. at 416. The plaintiff asserted claims for common-law negligence and negligence *per se* based on ORS 471.410(1), but did not allege statutory liability under *former* ORS 30.950 (1993). *Id*. at 417. This court affirmed dismissal of the negligence *per se* claim. *Id*. at 418-19 (citing *Stachniewicz*, 259 Or at 586-87; *Hawkins*, 307 Or at 265). On the common-law negligence claim, the court concluded that an intoxicated patron could assert a claim against an alcohol provider for damages caused by the patron's intoxication. *Id*. at 427.

In response to *Grady* and *Fulmer*, the 2001 legislature amended *former* ORS 30.950 (1999), *renumbered as* ORS 471.565 (2001). As a result, ORS 471.565 now provides, in part:

"(1)   A patron or guest who voluntarily consumes alcoholic beverages served by a person licensed by the Oregon Liquor Control Commission, a person holding a permit issued by the commission or a social host does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated. The provisions of this subsection apply only to claims for relief based on

"(1) The licensee, permittee or social host has served or provided the patron alcoholic beverages to the patron or guest, while the patron or guest was visibly intoxicated; and

"(2) The plaintiff proves by clear and convincing evidence that the patron or guest was served alcoholic beverages while visibly intoxicated."

injury, death or damages caused by intoxication and do not apply to claims for relief based on injury, death or damages caused by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest.

"(2)   A person licensed by the Oregon Liquor Control Commission, person holding a permit issued by the commission or social host is not liable for damages caused by intoxicated patrons or guests unless the plaintiff proves by clear and convincing evidence that:

"(a)   The licensee, permittee or social host served or provided alcoholic beverages to the patron or guest while the patron or guest was visibly intoxicated; and

"(b)   The plaintiff did not substantially contribute to the intoxication of the patron or guest by:

"(A)   Providing or furnishing alcoholic beverages to the patron or guest;

"(B)   Encouraging the patron or guest to consume or purchase alcoholic beverages or in any other manner; or

"(C)   Facilitating the consumption of alcoholic beverages by the patron or guest in any manner."

Or Laws 2001, ch 534, § 1. Subsection (1) was intended to overturn this court's holding in *Fulmer*, and subsection (2) was intended to limit the holding in *Grady. See, e.g.*, Minutes, Senate Committee on the Judiciary, SB 925, Mar 13, 2001, 1 (stating that focus of bill is to eliminate claims for intoxicated persons who injure themselves); Testimony, Senate Committee on Judiciary, SB 925, Mar 13, 2001, Ex A (statement of Bill Perry describing bill as "legislation to ensure than an establishment is not liable if customers who consume alcohol under their own free-will injure themselves").

Defendant and *amicus curiae* argue that the later amendments to the 1979 legislation mark the legislature's continuing efforts to limit the liability of alcohol providers. In their view, a plaintiff's burden was increased by the addition of the clear and convincing evidence standard, and the requirement that plaintiffs prove that they did not substantially contribute to the intoxication of the person that caused the injury.

For his part, plaintiff focuses on the 2001 amendments and argues that the phrase "does not have a cause of action, *based on statute or common law*" indicates that the legislature reaffirmed its previous provision of a statutory liability claim for serving a visibly intoxicated person. Plaintiff argues that, if a statutory liability claim did not already exist, the legislature would not have prohibited statutory claims for persons injured as a result of their own voluntary intoxication. In support of that argument, plaintiff cites the statement of the legislative counsel who drafted that part of the amendment: "[I]t occurred to me that perhaps it would be better to make it clear that this law that—this change to the law—would in fact not allow suits under theories, not only for common-law negligence, which is what is specified in the bill, but also under any theory." Tape Recording, Senate Committee on Judiciary, SB 925, March 13, 2001, Tape 57, Side A (statement of Dave Heynderickx). In plaintiff's view, if the legislature had never intended for ORS 471.565 or its predecessors to provide statutory rights of action, then it would not have necessary—when implementing the change in the law to prohibit first party claims—to expressly deny a statutory liability claim to future plaintiffs.

Defendant responds that plaintiff's argument fails for four reasons. First, defendant notes that subsection (1) concerns first-party claims, not third-party claims, so there was no reason for the legislature to refer to subsection (2) in subsection (1). Second, defendant argues, legislative counsel would have known that this court had previously held that subsection (2) did not create liability in third-party cases. Third, defendant asserts, when explaining the amendment, legislative counsel did not refer to subsection (2), which he likely would have done if that was the statute to which he meant to refer. From defendant's perspective, the purpose of the "based on statute or common law" phrase was to make clear that first-party claims could not be brought under any theory, including liability under statutes not yet considered by the courts. Finally, defendant argues that whatever the 2001 legislature may have thought about the originally enacted version of the law could not have altered that law's actual effect; if *former* ORS 30.950 (1979) and *former* ORS

30.955 (1979) did not create a statutory claim when enacted, the 2001 legislature's contrary belief would not matter.

In our view, the most that can be said for the provision in the 2001 amendment referring to liability based on "statute" is that, in light of *Chartrand*, *Solberg*, and *Grady*, the legislature was simply clarifying that the limits that it imposed would apply to statutory as well as common law claims. In short, that amendment is not pertinent to the issue of whether the 1979 legislature intended to create statutory liability or the elements that would be included in such a claim, nor did it create new statutory liability itself.

### III.   CONCLUSION

In sum, we conclude that, in enacting *former* ORS 30.950 (1979) and *former* ORS 30.955 (1979), the legislature did not intend to create a statutory right of action against social hosts or commercial providers for overservice of alcohol to visibly intoxicated guests or patrons that dispenses with any elements of a common law negligence claim. Instead, as enacted, the legislation limited this court's holding in *Davis* that a violation of ORS 471.130 (1975) constituted negligence *per se*, and it approved the common law negligence standard set out in this court's decision in *Campbell*, including the requirement that a plaintiff must establish that, when he or she served a visibly intoxicated person, the defendant knew or should have known of an unreasonable risk of harm to an injured third party.

Because the later amendments to the statute also did not create such a statutory right of action, ORS 471.565(2) does not provide a right of action against alcohol providers that has elements independent of a claim for common law negligence. It follows that the circuit court properly dismissed plaintiff's statutory liability claim and that the Court of Appeals erred in reversing the judgment for defendant.[22]

The decision of the Court of Appeals is reversed, and the judgment of the circuit court is affirmed.

---

[22] Because of our conclusion that the trial court did not err in dismissing plaintiff's statutory liability claim, we need not address defendant's harmless error argument.